The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Anthony DEMBRY, Defendant–Appellant.

No. 00CA0798.

Colorado Court of Appeals,
Div. III.

Dec. 18, 2003.

Certiorari Denied June 1, 2004.

§ 24–51–1105, C.R.S.2003.

Ken Salazar, Attorney General, Katharine J. Gillespie, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Law Office of Lindy Frolich, Lindy Frolich, Laurie S. Cohen–Ringler, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Anthony Dembry, appeals the judgment of conviction entered on jury verdicts finding him guilty of sexual assault on a child by one in a position of trust, sexual assault on a child as a crime of violence, and reckless endangerment. We affirm.

In 1998, defendant was living in Colorado Springs, where he worked as a mentor to foster children through a child protection agency. A.R., a twelve-year-old boy, was one of the children whom defendant mentored.

On February 15, 1999, defendant picked up A.R. from his foster parents' home and took him to his apartment, where he sexually assaulted him. A.R. reported the assault. A subsequent physical examination of A.R. revealed rectal soreness and an anal tear.

On February 17, 1999, police officers obtained and executed an arrest warrant for defendant and a search warrant for his apartment. During an interview with law enforcement officers, defendant admitted having had sexual contact with A.R. at his apartment, though he asserted that A.R. had initiated the contact and that it was consensual. While defendant was being interviewed, officers searched his apartment and located HIV medication. When confronted with this information, defendant also admitted he knew that he was HIV positive but did not use a condom during the assault.

After a jury trial, defendant was convicted of sexual assault on a child by one in a position of trust, sexual assault on a child, and reckless endangerment, as a lesser included offense of the charge of attempted manslaughter, based on his unprotected sexual contact with A.R. while being HIV positive. This appeal followed.

### I. Use of Suppression Hearing Testimony at Trial

Defendant asserts the trial court abused its discretion in ruling that his suppression hearing testimony, in which he admitted having sexual contact with A.R., could be used at trial to impeach his sister's opinion regarding his character. Defendant argues that his

Sixth Amendment right to a fair trial was violated because, based on the court's ruling, he did not call his sister to testify as to his good character for fear that his suppression hearing testimony might be used to impeach her testimony. Defendant sought to have his sister testify that his character was such that he would not have committed a sexual assault. We reject defendant's argument.

In *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court held that a defendant must be able to invoke his or her Fourth Amendment right to suppress illegally obtained evidence without surrendering the Fifth Amendment privilege against self-incrimination. Consequently, a defendant's suppression hearing testimony cannot be used at trial to prove guilt. *Simmons v. United States, supra.*

Nevertheless, in *People v. Rosa*, 928 P.2d 1365, 1371 (Colo.App.1996), a division of this court held that *Simmons* does not protect a defendant from the obligation to testify truthfully, and, therefore, a defendant's suppression hearing testimony may be used to impeach the defendant's contrary trial testimony. However, this case involves the potential testimony of a third person.

In *Rosa*, the division balanced the defendant's Fourth Amendment right to suppress illegally obtained evidence against his Fifth Amendment right not to incriminate himself. Here, because a third party would have been the source of the testimony, the trial court would have been required to balance defendant's Sixth Amendment right to present evidence with his Fourth and Fifth Amendment rights.

▉ Under the Sixth Amendment, a defendant has a due process right to present evidence in his or her defense, but that right is not absolute. The trial court must use its authority to accommodate all legitimate interests in the criminal trial process. *People v. Collie*, 995 P.2d 765, 771 (Colo.App.1999).

▉ The scope of cross-examination is a matter within the sound discretion of the trial court, and its determination will not be disturbed absent an abuse of that discretion. *People v. Crawford*, 191 Colo. 504, 507, 553 P.2d 827, 829 (1976). A defendant may introduce testimony regarding his or her reputation for good character, but that testimony may be impeached on cross-examination of the defendant's character witnesses by inquiry into relevant specific instances of conduct. CRE 404(a)(1), 405(a); *People v. Pratt*, 759 P.2d 676 (Colo.1988).

> [T]he purpose of cross-examination of a character witness is not to establish the truth of the acts inquired about but rather to show the existence of such acts as they may bear upon the credibility of the witness and the accuracy of his testimony regarding community opinion. Thus, a character witness may be asked whether he has heard that the defendant has been arrested for a crime whether or not it culminated in a conviction.

*United States v. Evans*, 542 F.2d 805, 817 (10th Cir.1976).

▉ We recognize that "it is improper to ask the character witness whether his or her testimony would be affected if the character witness assumed the existence of the particular act for which the accused is on trial." *See* Michael H. Graham, *Handbook of Federal Evidence* § 405.1 (5th ed.2001). However, we agree with the decisions of federal courts holding that such cross-examination of a character witness is proper when it concerns facts regarding the charged offenses that the defendant has conceded earlier in the trial through testimony or statements of counsel. *See United States v. Wilson*, 983 F.2d 221 (11th Cir.1993); *United States v. Velasquez*, 980 F.2d 1275 (9th Cir.1992).

▉ Here, the People did not seek to introduce defendant's suppression hearing testimony on the issue of guilt. During a conference out of the presence of the jury, defense counsel indicated that defendant sought to present his sister's testimony to show that his character was such that he would not have committed a sexual assault. However, if defendant called his sister as a character witness, the People intended to introduce defendant's suppression hearing testimony to impeach her opinion.

As in *Rosa*, the holding in *Simmons* does not relieve defendant of his obligation to

present truthful testimony, whether through his own testimony or that of others. Because defendant did not call his sister to testify, we can draw no conclusions as to the admissibility of the testimony she may have provided in response to questions from defense counsel. If we assume that (1) defense counsel's questions to defendant's sister would have elicited proper character evidence, and (2) defendant's sister would have been allowed to testify about his good character without being subjected to cross-examination about her awareness of defendant's suppression hearing testimony, there would have been a substantial question as to the accuracy of her statements of fact and the credibility of her opinions. Also, the proposed impeachment of the sister as a character witness would have been based upon defendant's suppression hearing testimony, made under oath, not a hypothetical question based upon the assumption that defendant was guilty of the crime charged. *See United States v. Wilson, supra; United States v. Velasquez, supra.*

Furthermore, the trial court did not prohibit defendant from calling his sister as a witness. To the contrary, the trial court allowed defendant, in the event he called his sister to the stand, to ask leading questions on direct examination so that defendant could present evidence without unintentionally eliciting character evidence. Nevertheless, defendant elected not to call his sister as a witness for any purpose.

Under the circumstances, we conclude that defendant's constitutional rights were not violated. His Fourth Amendment rights were protected when he testified at the suppression hearing. *See Simmons v. United States, supra.* His Fifth Amendment rights were protected because his suppression hearing testimony was not used during the prosecution's case-in-chief as evidence of his guilt. Finally, defendant's Sixth Amendment rights were not violated because he was not prevented from presenting evidence on his behalf. We further conclude that the trial court properly balanced defendant's Fourth, Fifth, and Sixth Amendment rights in ruling that his suppression hearing testimony could

be used at trial to impeach his sister's opinion regarding his character.

Thus, the trial court did not abuse its discretion.

## II. Motion to Sever

Defendant next argues the trial court abused its discretion by denying his motion to sever the attempted manslaughter count from the sexual assault charges. Defendant argues that the jury heard highly prejudicial evidence of his HIV status, which would not have been admissible to prove the sexual assault charges. We disagree.

### A.

As an initial matter, the People argue that because defendant did not renew his pretrial motion to sever during trial, he has waived his right to object to the joint trial. However, in *People v. Gross,* 39 P.3d 1279 (Colo.App.2001), a division of this court held that a defendant need not renew opposition to the prosecution's pretrial consolidation motion to preserve the issue for appellate review. Here, similarly, the prosecution amended the information to add the attempted manslaughter count. Therefore, following *Gross,* we conclude defendant was not required to renew his motion to sever, and we address his severance motion on the merits.

### B.

Denial of a motion to sever will not be disturbed on appeal absent a showing of abuse of the trial court's discretion resulting in actual prejudice to the defendant. *People v. Pickett,* 194 Colo. 178, 571 P.2d 1078 (1977).

Crim. P. 8(a)(2) allows for offenses to be tried together if they "are of the same or similar character or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Here, after law enforcement officials discovered that defendant was HIV positive and knowingly had unprotected intercourse with A.R., defendant was charged with attempted manslaughter. Because the attempted manslaughter charge arose from the same act of sexual assault on a child as the

other charges, the charge was properly brought in the same proceeding pursuant to Crim. P. 8(a)(2).

Additionally, the trial court weighed the possible prejudicial effect of defendant's HIV status against the possibility that A.R. would have to testify in two separate proceedings. The jury was instructed not to let its decision on any one count influence its decision on any other and not to let any prejudice dictate its decision.

Ultimately, the jury did not convict defendant of attempted manslaughter, but of the lesser included offense of reckless endangerment. Thus, defendant has not demonstrated actual prejudice as a result of the trial court's denial of his motion to sever. Therefore, the trial court did not abuse its discretion.

### III. Request for Mistrial

Defendant next asserts that the following cumulative errors resulted in an unfair trial: (1) the deputy's radio went off during the voir dire portion of jury selection; (2) the judge asked whether A.R. was cold while testifying; (3) the People's expert witness referred to defense counsel as the public defender; and (4) the trial judge nodded affirmatively during the prosecution's direct examination of A.R. Specifically, he argues that the trial court abused its discretion when it denied his request for a mistrial with respect to the first alleged error and did not sua sponte grant a mistrial with respect to the other three alleged errors. We conclude that no mistrial was required.

■ A mistrial is a drastic remedy that is warranted only where the prejudice to the defendant is too substantial to be remedied by other means. *People v. Copenhaver,* 21 P.3d 413, 417 (Colo.App.2000). A trial court has broad discretion to grant or deny a mistrial, and its decision will not be disturbed on appeal absent a gross abuse of discretion and prejudice to the defendant. *People v. Abbott,* 690 P.2d 1263, 1269 (Colo.1984).

■ Here, defendant had requested that the deputies wear plain clothes so as not to communicate to the jury that he was in custody at the time of trial. He asserts that this

purpose was defeated when the plainclothes deputy's mobile radio sounded. However, there is no record evidence that the jury heard the mobile radio, understood its significance, or associated it with defendant's custodial status.

■ Further, we are not persuaded that defendant was prejudiced when the court asked A.R. whether he was cold during his direct examination and offered to have a jacket brought to him.

■ "A trial court may not express to a jury any personal opinion of the credibility of testimony." *People v. Rogers,* 800 P.2d 1327, 1328 (Colo.App.1990). In *Rogers,* a division of this court concluded that the trial court had demonstrated undue partiality to a child witness when the judge came off the bench and personally escorted the child witness to and from the witness box.

However, in *People v. Woellhaf,* 87 P.3d 142, 2003 WL 21403159 (Colo.App. No. 00CA2351, June 19, 2003), a division of this court held that the trial court is accorded broad discretion to regulate courtroom conduct and may take steps to assuage a victim's fear in testifying. In *Woellhaf,* the trial court commented to the victim that she was "like a t.v. star" because she used a microphone during her testimony, and the prosecutor added that she was "like Britney Spears." The division held that, although such comments were inadvisable, they clearly were not comments on the victim's credibility.

In our view, the actions of the trial court here are more similar to those in *Woellhaf* than to those in *Rogers.* The court's question to A.R. was an attempt to make him more comfortable in testifying, but clearly did not lend credibility to his testimony.

■ Next, we cannot conclude that defendant was unfairly prejudiced when the prosecution's expert witness referred to defense counsel as the public defender. Defendant offers no evidence or authority for the proposition that being represented by the public defender's office is prejudicial in any way.

■ Finally, there is no record evidence of when, if ever, the trial court judge nodded his head affirmatively during the prosecution's direct examination. Defendant alleges that two attorney spectators saw the judge nodding, but that his defense counsel did not. The trial court judge stated that he did not nod in affirmation of the testimony of any witness. Defendant presented no evidence that the jury saw the judge nod at any time. Defense counsel made no contemporaneous objection regarding the alleged action.

Because defendant has not demonstrated prejudice, the trial court did not abuse its discretion in not granting a mistrial.

## IV. Challenge for Cause

Defendant next asserts that the trial court abused its discretion by not granting his challenge for cause. We perceive no abuse of discretion.

■ A trial court's ruling on a challenge for cause to a prospective juror is reviewed for abuse of discretion. This standard gives deference to the trial court's assessment of the credibility of a prospective juror's responses, recognizes the trial court's unique role and perspective in evaluating the demeanor and body language of live witnesses, and serves to discourage an appellate court from second-guessing those judgments based on a cold record. *Carrillo v. People*, 974 P.2d 478, 485–86 (Colo.1999).

On answering the jury questionnaire, one prospective juror indicated that it might be difficult for him fairly to judge a case involving sexual assault because his brother had been sexually assaulted as a child. He also indicated that he thought homosexuality was wrong and unnatural. For these reasons, defendant challenged the prospective juror for cause.

■ When the prospective juror was questioned by the court and counsel, he stated that his brother was forced to perform oral sex on a female babysitter in 1982. He stated that he was not present when the assault occurred and was very young at the time. He also indicated that he had not formed an opinion about the incident, had not thought about it in several years, and would be able to separate his feelings about what happened to his brother if the facts of this case were dissimilar. The juror also explained that while homosexuality was against his philosophical beliefs, his beliefs would not prevent him from judging the case based on the evidence. He also indicated that the mere fact that one is homosexual does not bear on whether that person is a pedophile.

Because the prospective juror indicated that his personal experiences would not improperly influence his decision, the trial court did not abuse its discretion in denying defendant's challenge for cause. *See People v. Griffin*, 985 P.2d 15, 20 (Colo.App.1998)("prospective juror's indication of concern about the ability to set aside a prejudice or preconceived belief about some facet of the case does not automatically warrant exclusion for cause").

## V. Rape Shield Statute

Defendant asserts the trial court abused its discretion in denying his motion to introduce, as exceptions to the rape shield statute, evidence that A.R. (1) had been sexually assaulted previously and was undergoing counseling for those assaults, (2) was a perpetrator of sexual assault, and (3) had had conversations with others regarding his own sexuality and defendant's sexuality. We disagree.

■ We review a trial court's factual determination as to the relevance of evidence for abuse of discretion. *People v. Harris*, 43 P.3d 221, 225 (Colo.2002).

The rape shield statute's general prohibition on the admission of evidence of a rape victim's sexual conduct is qualified by three statutory exceptions. § 18–3–407, 6 C.R.S. (2001). Thus, the evidence is not presumptively irrelevant under the statute if: (1) it is evidence of a victim's prior sexual contact with the accused; (2) it is evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or similar evidence; or (3) if the defendant makes an offer of proof showing that the evidence is relevant to a material issue in the case. Evidence coming within one of these provi-

sions is not automatically admissible, however: it remains subject to the usual rules of evidence.

*People v. Harris, supra,* 43 P.3d at 225.

Here, the evidence defendant sought to introduce was not evidence of A.R.'s prior sexual contact with him. Additionally, defendant does not argue that the evidence concerned specific instances of sexual activity showing that someone else was the source of A.R.'s anal tear.

Defendant argues that the evidence should have been admitted because it was relevant to the issue of whether he employed force when he sexually assaulted A.R. because A.R. was predisposed to have homosexual, pedophilic experiences. However, this is exactly the type of evidence that the rape shield statute proscribes. *See People v. Harris, supra; People v. McKenna,* 196 Colo. 367, 372, 585 P.2d 275, 278 (1978)(the rape shield statute demonstrates the legislature's unequivocal commitment to the principle that "victims of sexual assaults should not be subjected to psychological or emotional abuse in court as the price of their cooperation in prosecuting sex offenders").

A.R.'s sexuality and prior sexual experiences are irrelevant to the issue of whether defendant used force when sexually assaulting him on the date in question. Defendant failed to satisfy the burden of showing relevance sufficient to rebut the rape shield statute's presumption of irrelevance; therefore, we perceive no abuse of discretion in the trial court's ruling.

The judgment is affirmed.

Judge NIETO and Judge CARPARELLI concur.