The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Terrence T. HODGES, Defendant–
Appellant.

No. 03CA0018.

Colorado Court of Appeals.
Div. II.

July 14, 2005.

As Modified on Denial of Rehearing
Aug. 18, 2005.

Certiorari Granted April 24, 2006.

**422**

John W. Suthers, Attorney General, Cheryl Hone, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Jonathan D. Reppucci, LLC, Jonathan D. Reppucci, Denver, Colorado, for Defendant–Appellant.

VOGT, J.

Defendant, Terrence T. Hodges, appeals the judgment of conviction and sentence entered on (1) a jury verdict finding him guilty of possession of, and possession of with intent to distribute, a schedule II controlled substance—1000 grams or more, and finding that he imported the controlled substance into the state, and (2) his subsequent adjudication as a habitual criminal. We vacate the separate convictions and sentences for the sentence enhancers (amount over 1000 grams and importation), vacate the sentence on the possession count, affirm the remainder of the judgment and sentence, and remand to the trial court for resentencing and correction of the mittimus.

Defendant was arrested after selling over one kilogram of methamphetamine to an undercover detective. At trial, the prosecution introduced evidence that defendant had obtained the methamphetamine from a source in California and had brought it with him by bus into Colorado. Defendant did not deny his involvement in the transaction, but contended that the main actor was his codefendant and that the codefendant had manufactured the methamphetamine in Colorado.

I.

In related arguments, defendant challenges the trial court's appointment of Kevin Pernell as his counsel and its subsequent refusal to allow Pernell to withdraw. We find no basis for reversal.

Alternate defense counsel was initially appointed for defendant in December 2001 because the public defender was representing the codefendant. In May 2002, two weeks before trial, defendant asked the court to appoint a different attorney. He told the court he wanted new counsel because the lawyer who had initially been appointed did not share his belief that "the case [was] winnable." After questioning and advising defendant, the trial court allowed counsel to withdraw, but it declined to appoint a different attorney at state expense. Defendant confirmed that he wanted to proceed pro se and that he would be ready for trial on May 20.

On May 20, defendant advised the court that he had just hired attorney Kevin Pernell, and that Pernell needed more time to prepare for trial. Defendant waived his speedy trial rights, and trial was reset for August 5, 2002.

On August 2, the Friday before trial, Pernell moved for a continuance, stating that he was "absolutely ready and prepared for trial," but that he wanted additional time to allow defendant to consider options other than proceeding to trial. The trial court denied the motion.

On August 5, the morning of trial, defendant advised the court that he wanted to fire Pernell based on a "conflict of interest." The conflict, according to defendant, was that Pernell did not believe they had a defense, while defendant believed they had "winnable" issues. The court noted that it had observed no conflict and that Pernell had performed

competently at the motions hearing. However, after engaging in further colloquy with defendant, the court found that defendant had knowingly, intelligently, and voluntarily decided to proceed on his own, and it ruled that he could do so.

The next morning, after further discussions, defendant and Pernell affirmed their willingness to have Pernell reenter the case, this time pursuant to the court's appointment of him as alternate defense counsel. Trial was reset to begin November 12, and defendant confirmed his understanding that he had to be prepared to proceed on that date, either with Pernell or pro se.

On October 18, Pernell moved to withdraw based on "irreconcilable differences" with defendant. After the prosecutor objected, Pernell explained that he did not think he could effectively represent defendant, and that they were "at a point of true animosity or, at least, I am, and it's just not going to work out to be effective." He added that he and defendant saw matters differently and that: "We're not even truly communicating or, at least, I'm concerned that we're not truly communicating." Pernell also noted that, "short of Johnny Cochran or Harvey Steinberg or whatever luminary is rolling through [defendant's] mind," he did not know that any other attorney would be able to come in and work with defendant.

The trial court denied the motion to withdraw "at this time," finding that defendant simply was "very determined never to go to trial." However, the court advised Pernell that he could file a written motion to withdraw if he wanted to allege "something that you believe places you in an ethical dilemma."

Thereafter, Pernell did not file a formal motion to withdraw but, instead, proceeded to represent defendant at trial and at sentencing.

### A.

■ Defendant contends the trial court erred by appointing Pernell to represent him because Pernell was not on the approved counsel list established by the office of alternate defense counsel (OADC). We disagree.

■ A trial court has the inherent power to appoint counsel to represent an indigent defendant. *See Stern v. County Court,* 773 P.2d 1074, 1077 (Colo.1989)(quoting ABA Standards for Criminal Justice 5–2.2 (1986) and observing that assignments as appointed counsel in criminal cases "should be distributed as widely as possible among the qualified members of the bar"). In the exercise of this power, the court may appoint private counsel to represent a defendant if the public defender has a conflict of interest. *See People v. Romero,* 767 P.2d 782 (Colo.App.1988).

In 1996, the General Assembly created the OADC to "provide legal representation in circumstances in which the state public defender has a conflict of interest in providing legal representation." Section 21–2–101(1), C.R.S.2004. Persons appointed as alternate defense counsel are to serve their clients independently of political considerations or private interests, provide services commensurate with those available to nonindigents, and carry out their duties "in accordance with the Colorado rules of professional conduct and with the American bar association standards relating to the administration of criminal justice, the defense function." Section 21–2–101(1).

Section 21–2–103(4), C.R.S.2004, states: "The [OADC] shall provide legal representation for indigent persons by contracting with licensed attorneys and investigators pursuant to section 21–2–105." Section 21–2–105(1), C.R.S.2004, provides, as relevant here, that the OADC "shall establish, where feasible, a list of approved contract attorneys to serve as counsel." The section further states that, as a condition of placement on the approved list, the contracting attorney "shall agree to provide services based on the terms to be established in a contract," and that the contract "shall specify that the services shall be provided subject to the Colorado rules of professional conduct." Neither this section nor any other statute prescribes other qualifications or requirements for placement on the OADC list.

■ Thus, under the current statutes, if a criminal defendant "wants the state to pay the costs of his attorney and supporting ser-

vices, his only choice is to be represented by the public defender, or in the case of a conflict, a state-appointed alternate defense counsel." *People v. Cardenas,* 62 P.3d 621, 623 (Colo.2002). While a defendant has the right to be represented by other counsel of his choice, the state is not obliged to pay the costs of that representation. *People v. Cardenas, supra.*

Citing the General Assembly's mandatory language in §§ 21–2–101(1) and 21–2–103(1)(a), C.R.S.2004, both of which state that the OADC "shall" provide legal representation where the public defender has a conflict of interest, defendant argues that the trial court's "power and duty to appoint counsel" for indigent defendants must now be "channeled through [the OADC]." Requiring him to proceed with Pernell, defendant asserts, violated rights afforded to him by these statutory provisions and by the United States and Colorado Constitutions.

Defendant's argument overlooks the fact that the trial court did in fact appoint the OADC to represent him when it appointed Pernell.

When Pernell was appointed by the trial court on August 6, 2002, after having previously withdrawn, he was appointed as alternate defense counsel. The written order of appointment names Pernell and then states that "Alternate Defense Counsel is appointed and will pay counsel." Pernell confirmed in court that he understood he was appointed as alternate defense counsel. He also advised the court on more than one occasion that he was not on the OADC list. The court nevertheless appointed him because he had "already invested time and effort in the case."

Thus, contrary to defendant's contention, the trial court did not violate the statutory provisions requiring appointment of the OADC where the public defender has a conflict of interest. Rather, the issue is simply whether that appointment was invalid because the individual attorney appointed as alternate defense counsel was not on the OADC list. We conclude that it was not.

We perceive nothing in the statutory language that requires the attorney appointed as alternate defense counsel to be "on the list." While § 21–2–105(1) directs the OADC to "establish, where feasible, a list of approved contract attorneys to serve as counsel," the phrase "where feasible" indicates that the existence of such a list is not a prerequisite to the provision of alternate defense counsel representation. Further, even where such a list has been prepared, neither § 21–2–105(1) nor any other provision expressly precludes the appointment of an attorney not on the list—particularly where, as here, the appointed attorney is one who is already familiar with the case. We express no opinion as to OADC's obligation to pay appointed counsel who are not on its approved list.

■ Additionally, defendant did not object on this basis at trial, and thus is entitled to reversal only if the appointment of an attorney from outside the OADC list so undermined the fundamental fairness of the trial itself as to constitute plain error. *See Wilson v. People,* 743 P.2d 415 (Colo.1987). In arguing that plain error exists here, defendant cites Pernell's subsequent disbarment for misconduct that occurred contemporaneously with his representation in this case. *See People v. Pernell,* 86 P.3d 429 (Colo. O.P.D.J.2004). However, that fact, without more, neither establishes ineffective assistance of counsel in this case nor renders the appointment plain error. *See People v. Kenny,* 30 P.3d 734, 743 (Colo.App.2000)("[s]uspension or disbarment can result from ethical misconduct or other bad behavior that does not necessarily indicate a lack of knowledge of the law"; thus, disbarment does not warrant a per se rule of ineffectiveness).

Although defendant cites no statute or regulation requiring OADC-listed attorneys to possess certain qualifications or experience, he nevertheless argues that his rights to a fair trial and to the effective assistance of counsel were violated because an attorney on the OADC list would have been "fully committed" to the Colorado Rules of Professional Conduct and to the ABA standards for criminal defense lawyers. *See* § 21–2–101(1). However, these are rules and standards to which all attorneys representing criminal defendants are held, not simply those on the OADC list. *See, e.g.,* Colo. RPC Preamble &

1.1; *Erickson v. People,* 951 P.2d 919 (Colo. 1998); *Harris v. People,* 888 P.2d 259 (Colo. 1995). The fact that Pernell may have violated them in another case does not establish that he did so here.

The only additional condition of placement on the OADC approved list is that the contracting attorney agree to accept the reimbursement provided in the contract. Section 21–2–105(1). Defendant does not assert that Pernell refused to accept compensation at the contract rate.

In sum, the trial court's appointment of Pernell neither violated the applicable statutes nor constituted plain error.

### B.

Defendant next contends the trial court abused its discretion in denying Pernell's motion to withdraw. He asserts that the hostility between him and Pernell constituted an actual conflict of interest that precluded Pernell's continued representation. We again disagree.

An attorney's motion to withdraw, as well as a defendant's motion to discharge an attorney, are matters addressed to the sound discretion of the trial court, whose ruling will not be disturbed on review absent a clear abuse of discretion. *People v. Schultheis,* 638 P.2d 8 (Colo.1981); *People v. Apodaca,* 998 P.2d 25 (Colo.App.1999).

Although an indigent criminal defendant has an absolute right to be represented by counsel, the defendant does not have the right to demand a particular attorney. *People v. Arguello,* 772 P.2d 87 (Colo.1989).

When an indigent criminal defendant voices objections to court-appointed counsel, the trial court must inquire into the reasons for dissatisfaction. If the defendant establishes good cause, such as a conflict of interest or a complete breakdown of communication, the court must appoint substitute counsel. *People v. Arguello, supra; People v. Apodaca, supra.* Conversely, "[a]s long as the trial court has a reasonable basis for believing that the lawyer-client relation has not deteriorated to the point where counsel is unable to give effective aid in the fair presen-

tation of a defense, the court is justified in refusing to appoint new counsel." *People v. Schultheis, supra,* 638 P.2d at 15.

In determining whether to appoint substitute counsel, the court may consider the timing of the request and the possibility that any new counsel will be confronted with similar difficulties. *People v. Rubanowitz,* 688 P.2d 231 (Colo.1984); *People v. Apodaca, supra; see also People v. Arguello, supra* (motions for discharge and substitution of court-appointed counsel cannot be manipulated in such a manner as to impede the efficient administration of justice).

If the court determines that substitution is not warranted, it may insist that the defendant choose between continued representation by existing counsel and appearing pro se. *People v. Arguello, supra; People v. Apodaca, supra.*

Applying those standards here, we conclude the trial court did not abuse its discretion in refusing to allow Pernell to withdraw based on the information before it, while at the same time leaving open the opportunity for Pernell to file a motion to withdraw if he perceived that an actual conflict had developed.

Neither the existence of animosity between defendant and Pernell nor Pernell's asserted disagreement with defendant regarding the strength of defendant's case constitutes an actual conflict of interest requiring the appointment of substitute counsel. *See People v. Arguello, supra* (right to counsel does not necessarily include a meaningful attorney-client relationship); *People v. Garcia,* 64 P.3d 857 (Colo.App.2002)(conflict between defendant and his counsel was a disagreement over strategy, and thus did not require appointment of new counsel); *People v. Apodaca, supra* (counsel's personal disbelief of defendant's version of the facts did not require court to appoint substitute counsel based on asserted conflict of interest).

The trial court was not required to conclude, based on Pernell's statement that he was "concerned that we're not truly communicating," that there was a complete breakdown of communication between defen-

dant and Pernell. *See People v. Apodaca, supra.* The court could also properly take into account defendant's history of obtaining delays in the proceedings based on his dissatisfaction with his counsel, and it could reasonably conclude that the next appointed counsel would encounter the same difficulties in representing defendant. *See People v. Rubanowitz, supra.* Additionally, the court was not obligated to appoint substitute counsel based on Pernell's statement that he could not provide effective assistance of counsel. *See Stern v. County Court, supra,* 773 P.2d at 1080 (rejecting attorney's argument that he should be allowed to withdraw because he could not provide effective assistance, and concluding that it was "premature to assert ineffective assistance of counsel before representation has occurred").

■ We also reject defendant's related contention that reversal is required because the trial court did not inquire into his dissatisfaction with Pernell when Pernell moved to withdraw on October 18.

■ Although a trial court has an obligation to inquire into the reasons for an indigent defendant's objections to court-appointed counsel, failure to do so does not require reversal in every instance. *See People v. Smith,* 77 P.3d 751 (Colo.App.2003); *People v. Mossmann,* 17 P.3d 165 (Colo.App. 2000).

The trial court in this case had inquired on a previous occasion into defendant's reasons for believing he had a conflict of interest with Pernell. The court had also thoroughly advised defendant on other occasions of the disadvantages of proceeding pro se. *Cf. People v. Arguello, supra* (defendant's right to counsel was violated where court did not expressly advise defendant or ensure that his waiver of right to counsel was valid, and defendant did not effectively represent himself after being required to proceed pro se). Additionally, defendant does not contend on appeal that, had the trial court inquired of him again at the October 18 hearing, he could have articulated reasons justifying withdrawal that were different from those Pernell himself relied on in seeking withdrawal.

## C.

■ We similarly disagree with defendant's contention that he is entitled to a new trial because the asserted conflict of interest adversely affected Pernell's representation.

■ To obtain relief on this basis, a defendant bears the burden of demonstrating that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected counsel's performance. The defendant must point to specific instances in the record to suggest actual impairment of his interest. More specifically, the defendant "must identify something that counsel chose to do or not do, as to which he had conflicting duties, and must show that the course taken was influenced by that conflict." *People v. Kenny, supra,* 30 P.3d at 745 (quoting *Vance v. Lehman,* 64 F.3d 119, 124 (3d Cir.1995)). If that burden is met, prejudice is established. *People v. Kenny, supra,* 30 P.3d at 745; *see* Colo. RPC 1.7.

As noted, the claimed animosity and lack of communication between defendant and Pernell did not constitute an actual conflict of interest. Further, even if it were deemed an actual conflict of interest, defendant does not identify instances in which Pernell made a choice to act or not to act that was specifically attributable to the alleged conflict.

Although defendant states that he is not challenging his convictions on the ground of ineffective assistance of counsel, he nevertheless cites various claimed deficiencies in Pernell's performance—for example, failure to (1) hire an investigator, (2) request a motions hearing transcript, (3) file motions relating to the habitual criminal counts, (4) offer a theory of the case instruction, (5) make an opening statement, or (6) offer evidence or argument during the habitual criminal phase of the trial—that would be relevant to establishing an ineffective assistance of counsel claim. *See Davis v. People,* 871 P.2d 769 (Colo. 1994)(to establish ineffective assistance of counsel, defendant must prove that defense counsel's performance was deficient and that the deficient performance prejudiced him).

■ However, as defendant appears to concede, claims of ineffective assistance of counsel are better resolved in postconviction

proceedings. *See People v. Thomas,* 867 P.2d 880 (Colo.1994); *People v. Apodaca, supra.* Such procedure is particularly appropriate where, as here, more facts are needed to determine, for example, whether defense counsel did in fact hire an investigator; whether the acts and omissions of which defendant complains constituted deficient performance under the circumstances; whether such acts or omissions were based on trial strategy and thus are insufficient to support an ineffective assistance claim, *see Ardolino v. People,* 69 P.3d 73 (Colo.2003); and whether defendant was prejudiced by any of the acts or omissions of which he complains.

## II.

Defendant raises two challenges to the sufficiency of the evidence to support his convictions. We find no basis for reversal.

■ When the sufficiency of the evidence is challenged on appeal, we must determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty beyond a reasonable doubt. The prosecution must be given the benefit of every reasonable inference that might fairly be drawn from the evidence. Further, in assessing the sufficiency of the evidence, we defer to the trial court's assessment of the credibility of witnesses and the weight of the evidence. *Kogan v. People,* 756 P.2d 945 (Colo.1988).

### A.

■ Although defendant does not dispute that the substance in his possession was methamphetamine, he contends there was nevertheless insufficient evidence to sustain his convictions because the prosecution did not prove that methamphetamine is a "schedule II controlled substance." We are not persuaded.

We note initially that the jury was instructed that "controlled substance" includes methamphetamine. Defendant did not object to the jury instruction. Moreover, when the court and counsel were formulating a response to a question from the jury, the court asked whether anyone "[d]isputed that methamphetamine is a schedule II controlled substance," and defense counsel answered, "no."

■ Where an error or omission in jury instructions is attributable to inadvertence or attorney incompetence and not to trial strategy, a reviewing court should review for plain error rather than viewing the contention as waived under the doctrine of invited error. *See People v. Stewart,* 55 P.3d 107 (Colo. 2002). Here, even if we assume that the issue is not waived, we find no error, plain or otherwise.

Section 18–18–204(2)(c)(II), C.R.S.2004, states that methamphetamine is a controlled substance "listed in schedule II." Because the General Assembly has defined methamphetamine as a "schedule II controlled substance," the prosecution was not required to prove that it was. *See Frayer v. People,* 684 P.2d 927, 930 (Colo.1984)(trial court did not invade fact-finding province of jury by instructing jury that hydrocodone was a narcotic drug; "That determination had already been made by the General Assembly, and, as a result, the prosecution was relieved of proving that fact beyond a reasonable doubt."); *People v. Parent,* 190 Colo. 76, 543 P.2d 1241 (1975)(where legislature classified marijuana as a narcotic, it was not necessary for prosecution to prove that marijuana was in fact a narcotic drug); *cf. People v. Valdez,* 56 P.3d 1148 (Colo.App.2002)(evidence was insufficient to prove that defendant possessed codeine in a concentration sufficient to place it on schedule III; however, because evidence established that tablets found in defendant's apartment contained codeine and he knew a prescription was necessary to possess them, it was sufficient to establish defendant's guilt of lesser included misdemeanor offense).

■ Nor do we agree with defendant's related argument that the lack of a jury finding on this issue violated the principles set forth in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004),

because the status of methamphetamine as a schedule II controlled substance subjected him to enhanced punishment. The jury found that defendant possessed methamphetamine with intent to distribute it. Methamphetamine's status as a schedule II controlled substance has been determined by the General Assembly as a matter of law, and this determination does not depend on the facts of a particular case. Defendant's sentence was within the range prescribed by the General Assembly for the offenses involving schedule II controlled substances of which he was convicted. *Apprendi* and *Blakely*, which address situations in which a sentencing court aggravates a defendant's sentence based on facts not found by the jury or admitted by the defendant, are not implicated in such circumstances. *See People v. Hogan*, 114 P.3d 42 (Colo.App.2004).

### B.

We also reject defendant's contention that his enhanced sentence for importation of a schedule II controlled substance must be set aside because the only evidence that he introduced methamphetamine into Colorado came in the form of his own statements to the police.

Although a conviction may not rest solely upon the defendant's uncorroborated confession, only slight corroborating evidence is required. It is enough if there is additional evidence, either circumstantial or direct, to convince the jury that the crime charged is real and not imaginary. *See Hampton v. People*, 146 Colo. 570, 362 P.2d 864 (1961); *People v. Quinn*, 794 P.2d 1066 (Colo.App. 1990).

A defendant is subject to sentencing as a special offender if the defendant "unlawfully introduced, distributed, or imported into the state of Colorado any schedule I or II controlled substance." Section 18–18–407(1)(d), C.R.S.2004.

At trial here, detectives testified that defendant had told them his source for the methamphetamine was in California and that he purchased three pounds of methamphetamine from this source. One detective testified that defendant told them he took a bus from California to Denver so that he could conceal the methamphetamine on his person. During his own trial testimony, defendant denied that the methamphetamine came from California and instead asserted that the drugs were manufactured in Denver.

Although defendant thus partially contradicted his confession to the detectives when he testified at trial, his earlier admission that the drugs were from California is corroborated by other parts of his trial testimony. Specifically, defendant testified that he was in California when the undercover detective allegedly initiated the drug transaction. On cross-examination, he testified that he had gone to California for some days after having had a conversation about buying methamphetamine. On redirect examination, he testified that he had taken a Greyhound Bus back to Denver from California.

Defendant's own trial testimony thus provided some evidence, independent of his confession to the police, corroborating his prior statement that he had imported the methamphetamine into Colorado. This corroborating evidence and the detectives' trial testimony, taken together, were sufficient when considered under the applicable standards to support the jury's finding on the importation sentence enhancer.

### III.

Defendant contends, the People concede, and we agree that the mittimus must be corrected to vacate the separate convictions and sentences on count two, possession with intent to distribute 1000 grams or more of a schedule II controlled substance pursuant to § 18–18–405(3)(a)(III), C.R.S.2004, and count four, special offender designation for importation of a schedule II controlled substance pursuant to § 18–18–407(1)(d). Both counts refer to sentence enhancers, not substantive offenses. *See People v. Pineda–Eriza*, 49 P.3d 329 (Colo.App.2001)(vacating substantive conviction entered on jury's finding that defendant possessed over twenty-eight grams of cocaine, as that finding was a sentence enhancer); *see also People v. Ramirez*, 997 P.2d 1200 (Colo.App.1999)(provisions of § 18–18–407(1) are sentence enhanc-

ers and do not create substantive offenses), *aff'd*, 43 P.3d 611 (Colo.2001).

The People also point out, and we agree, that defendant's eighteen-year sentence on count three, for possession of a schedule II controlled substance, does not reflect the effect of the importation sentence enhancer. Pursuant to § 18–18–407(1)(d), the minimum sentence on this offense is eight years, not six years, as the trial court appears to have assumed when it trebled the sentence in light of defendant's habitual criminal adjudication. *See* §§ 18–1.3–401(1)(a)(V)(A), 18–18–407(1), C.R.S.2004. Thus, on remand, the court must resentence defendant on count three in accordance with § 18–18–407(1), and must correct the mittimus to so reflect.

Finally, we agree with the People that the mittimus should also be corrected to reflect that defendant was convicted of two habitual criminal counts. *See* Crim. P. 36; *People v. Glover*, 893 P.2d 1311 (Colo.1995)(court may correct clerical errors in mittimus).

The convictions and sentences on the sentence enhancers in counts two and four are vacated, and the sentence on count three is vacated. In all other respects, the judgment and sentence are affirmed. The case is remanded to the trial court with directions to resentence defendant on count three, and to correct the mittimus to (1) reflect the new sentence on count three, (2) vacate the separate convictions and sentences on counts two and four, and (3) reflect defendant's conviction on two habitual criminal counts.

Judge ROTHENBERG and Judge WEBB concur.