Terrence T. HODGES, Petitioner

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 05SC682.

Supreme Court of Colorado,
En Banc.

May 21, 2007.

Jonathan D. Reppucci, LLC, Jonathan D. Reppucci, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, Cheryl Hone Canaday, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Respondent.

Samler and Whitson, P.C., Hollis A. Whitson, Eric A. Samler, Denver, Colorado, Attorneys for Amicus Curiae Office of Alternate Defense Counsel.

Justice BENDER delivered the Opinion of the Court.

## I. Introduction

In this appeal, we review and affirm the judgment of *People v. Hodges*, 134 P.3d 419 (Colo.App.2005), in which the court of appeals affirmed the convictions of Terrence T. Hodges.[1] While we agree that Hodges's convictions should not be disturbed, we disagree with the court of appeals' conclusion that the trial court did not err by appointing alternate defense counsel who was not on the Office of Alternate Defense Counsel's list of approved attorneys. The trial court's appointment of

alternate defense counsel not on this list was in direct contravention of the mandate of the OADC statute, sections 21–2–101 to –106, C.R.S. (2006). Although Hodges was represented by counsel who was improperly appointed by the trial court, the trial court's administrative error violated no cognizable right of Hodges's under the OADC statute. Hence, albeit on different grounds, we affirm the judgment of the court of appeals.

## II. Facts and Proceedings Below

Terrence T. Hodges was arrested on August 30, 2001, after an undercover police detective purchased over a kilogram of methamphetamine from him. Hodges was charged with four felony counts, including possession and possession with intent to distribute a schedule II controlled substance, possession with intent to distribute 1,000 grams or more of a schedule II controlled substance, and importation of a schedule II controlled substance.

The trial court determined that Hodges was indigent and thus eligible for legal representation by the Office of the State Public Defender, but a conflict of interest prevented such representation because the Public Defender was already representing Hodges's co-defendant. Hence, the district court appointed an attorney to represent Hodges through the Office of Alternate Defense Counsel.

Several months later, Hodges moved for substitution of counsel because he was unsatisfied with his OADC attorney. Hodges stated that he disagreed with the OADC attorney's belief that he had no defense. The district court denied Hodges's motion, finding the OADC attorney to be competent. The district court gave Hodges the option of proceeding pro se or with the OADC attorney. Hodges chose to proceed pro se.

On the morning his trial was to begin, Hodges privately retained attorney Kevin

---

1. The court of appeals vacated Hodges's separate conviction and sentences for the charges of possession with intent to distribute 1,000 grams or more of a schedule II controlled substance and importation of a schedule II controlled substance, as these charges were sentence enhancers and not substantive crimes. *Id.* at 428–29. The

court of appeals also vacated his sentence for possession of a schedule II controlled substance because the district court miscalculated the effect of the importation sentence enhancer, and remanded the case to the trial court to correct the mittimus. *Id.* at 429. We do not disturb this portion of the court of appeals' opinion.

Pernell to represent him.[2] The district court granted Hodges a continuance so that Pernell could prepare for trial, requiring Hodges to contemporaneously agree to waive his speedy trial right.

On the next trial date, Hodges chose to fire Pernell and again appear pro se. Hodges told the district court that Pernell's failure to develop a meaningful defense constituted a conflict of interest because Hodges believed he had "winnable" issues. The court concluded that there was no conflict of interest but permitted Pernell to withdraw, finding that Hodges's decision to proceed pro se was knowing, voluntary, and intelligent. The district court ordered Hodges to appear the next morning for trial.

Hodges appeared for trial the next day as ordered. For reasons not apparent in the record, the district court conducted an *in camera* discussion with Hodges and the People concerning Pernell and then also spoke with Pernell off the record. The court then appointed Pernell as alternate defense counsel, even though Pernell was not on the OADC's list of approved attorneys with OADC contracts, with the consent of both Hodges and Pernell:

> THE COURT: We had some discussions previously in chambers concerning Mr. Pernell, and he did come by, and I informed him of what had transpired in chambers, and I know we had reset this until ten o'clock to allow Mr. Hodges to speak with Mr. Pernell, and the District Attorney as well, so, Mr. Pernell, what is the status at this time?

> MR. PERNELL: In talking with Mr. Hodges, and the District Attorney, or District Attorneys, excuse me, on the premise that Mr. Hodges is indigent, I'm confident he will make that, because he doesn't have a job, and isn't from here, and counting on me being able to be appointed under the ADC program, and he will be able to get an investigator, so

> I am willing to enter the case, prepare this case for trial, and consult with the District Attorney's Office to clear dates that I think will work for everyone, contingent on the Court's calendar.

> THE COURT: Mr. Hodges, you evidently wanted to fire or discharge or sever your relationship with Mr. Pernell yesterday. Have you and he talked, and do you feel comfortable at this point? The Court is prepared to appoint him as alternative defense counsel, therefore he will be paid through the Court, since he has already invested time and effort in this case.

> If you do qualify as indigent it makes sense to appoint another ADC and start from the beginning again. Is that what you want to do at this point?

> MR. HODGES: Yes.

The trial court then set a third trial date several months out so that Pernell would have time to hire an investigator.

Three weeks prior to the new trial date, Pernell moved to withdraw because of a conflict of interest with Hodges, citing "irreconcilable differences." Pernell told the court that he did not think he could effectively represent Hodges, stating, "We're at a point of true animosity or, at least, I am, and it's just not going to work out to be effective." The district court denied Pernell's motion to withdraw because it found that he "alleged nothing that is not a matter of commonplace, if not routine," regarding the attorney-client relationship between the Public Defender or OADC and defendants, and that Hodges was simply "very determined never to go to trial." The district court advised Pernell that he could file a written motion to withdraw if he could allege something that placed him in an "ethical dilemma." Pernell did not file a formal motion to withdraw but instead proceeded to represent Hodges at his trial and sentencing.

---

**2.** Unknown to Hodges or the district court, the Office of Attorney Regulation Counsel was actively investigating Pernell for a pattern of misconduct and repeated ethical violations including the failure to investigate claims, failure to communicate with and perform work requested by his clients, and knowing conversion of clients' funds.

*People v. Pernell,* 86 P.3d 429 (Colo.O.P.D.J. 2004). Pernell was disbarred for this conduct in 2004, *id.* at 434, after the conclusion of Hodges's trial and sentencing in November 2002. None of the conduct at issue in Pernell's disciplinary case involved Hodges's case. *See id.*

At the conclusion of a three-day jury trial, the jury found Hodges guilty on all counts. The district court conducted a bench trial on the habitual criminal charges and sentenced Hodges as a habitual criminal to forty-eight years in prison for possession with intent to distribute, twenty years for possession with intent to distribute 1,000 grams or more, thirty-five years for importation, and eighteen years for possession, all to run concurrently.

Hodges appealed his conviction to the court of appeals, arguing that he was entitled to a reversal of his convictions and a new trial because the district court violated Colorado law when it erroneously appointed Pernell as alternate defense counsel and then refused to allow Pernell to withdraw when a conflict of interest allegedly arose. *Hodges,* 134 P.3d at 422. Hodges argued that the district court violated his rights under the OADC statute and his constitutional right to counsel. *Id.* at 423–26. The court of appeals affirmed Hodges's convictions, reasoning that the plain error standard applies to any error in appointing Pernell because Hodges did not object to his appointment at trial. *Id.* at 424. The court of appeals also reasoned that Hodges had not shown that he suffered any prejudice by virtue of Pernell's representation. *Id.* at 426.

Hodges and the OADC both filed petitions for rehearing. The court of appeals denied these petitions, but added a sentence to its opinion regarding payment of Pernell: "We express no opinion as to OADC's obligation to pay appointed counsel who are not on its approved list." *Id.* at 424.

Hodges petitioned this Court for certiorari review, arguing that the court of appeals erred by: (1) interpreting the OADC statute to allow a district court to appoint an attorney to represent an indigent client who has not been approved by the OADC; (2) failing to grant a new trial to Hodges; (3) affirming the district court's denial of Pernell's motion to withdraw; and (4) concluding that the fact that methamphetamine is a schedule II controlled substance is a matter of law that need not be proved beyond a reasonable doubt under the Sixth Amendment. The OADC also petitioned this Court for certiorari review, arguing that the court of appeals erred by: (1) holding that a trial court has inherent authority to appoint counsel to indigent defendants outside of the purview of the OADC statute; (2) holding that the district court need not work within the OADC process for contracting with and hiring attorneys; and (3) not requiring the judicial department to pay for an indigent defendant's representation where the OADC neither approved the appointment nor contracted with the appointed attorney. We granted certiorari only on Hodges's first issue—whether the court of appeals erred in interpreting the OADC statute to allow a district court to appoint alternate defense counsel who is not under contract with or approved by the OADC [3]—and thus focus our analysis there.

### III. Analysis

The General Assembly has established by statute two state agencies to provide legal representation to indigent criminal defendants: the Public Defender and the OADC. The Public Defender statute requires the Public Defender to represent indigent persons accused of crime. § 21–1–101(1), C.R.S. (2006). The OADC statute steps in to provide counsel to indigent criminal defendants where the Public Defender has a conflict of interest in providing legal representation. § 21–2–101(1); § 21–2–103(1). At issue in this case is the mandate of the OADC statute, sections 21–2–101 to –106.

Section 21–2–103(4) provides that the OADC "shall provide legal representation for indigent persons by contracting with licensed attorneys and investigators pursuant to section 21–2–105." Section 21–2–105(1) sets forth the OADC procedure and directs that the OADC shall provide attorneys for indigent criminal defendants from a list of approved contract attorneys, where feasible,[4]

---

3. We granted certiorari on the following issue:

 Whether the Court of Appeals erred in interpreting C.R.S. 21–2–101(1).

4. By the plain language of this section, the "where feasible" exception applies to the OADC's duties to establish a list of approved attorneys and to contract with those attorneys, and does

and sets out the details of those attorney contracts:

> [T]he alternate defense counsel *shall* contract, where feasible, without prior approval of the court, for the provision of attorney services for cases described in section 21–2–103(1).... The office of alternate defense counsel *shall* establish, where feasible, a list of approved contract attorneys to serve as counsel and a list of approved investigators to provide investigative services in such cases.[5]

(Emphasis added.)

Subsection 101(1), which establishes the OADC, and subsection 103(1), which sets out the circumstances under which the OADC provides legal representation, both state that the OADC "*shall* provide legal representation" in circumstances in which the state public defender has a conflict of interest; subsection 103(4) states that the OADC "*shall* provide legal representation for indigent persons by contracting with licensed attorneys ... pursuant to section 21–2–105;" and subsection 105(1) states that the OADC "*shall* establish, where feasible, a list of approved contract attorneys to serve as counsel." (Emphasis added.)

Much of the language in the OADC statute is mandatory as it contains the word "shall." *See People v. Dist. Court,* 713 P.2d 918, 921 (Colo.1986) (noting that "the use of the word 'shall' in a statute is usually deemed to invoke a mandatory connotation"). "Shall" is a word of command, denoting obligation and excluding the idea of discretion. *See Black's Law Dictionary* 1407 (8th ed.2004). The net result of the mandatory language in these provisions is that, by its plain language, the OADC statute requires a district court to appoint as alternate defense counsel an attorney whose name appears on the list of OADC-approved counsel.

■ Supreme Court of Colorado Chief Justice Directive 04–04, which implements the OADC statute, contains similar mandatory language and supports our conclusion that when a district court appoints alternate defense counsel, it must appoint an attorney from the OADC list. Chief Justice directives are an expression of Judicial Branch policy and are to be given full force and effect in matters of court administration. *Office of the State Court Adm'r v. Background Info. Servs., Inc.,* 994 P.2d 420, 431 (Colo.1999). Chief Justice Directive 04–04 provides that "[t]he Office of Alternate Defense Counsel (OADC) *shall* maintain a list of qualified attorneys for use by the courts in making appointments." C.J.D. 04–04(III)(B) (emphasis added). The Chief Justice Directive mandates that "[t]he court *shall* appoint an Alternate Defense Counsel attorney to represent indigent persons in cases in which the court determines that the Public Defender has a conflict of interest and removes the Public Defender from the case," and further clarifies that "[t]he OADC is responsible by statute to handle *all* Public Defender conflict cases." C.J.D. 04–04(III)(B)(1) (emphasis added).

■ The mandatory language in the OADC statute and Chief Justice Directive 04–04 limits the district court's authority to appoint counsel to indigent defendants. Hence, the court of appeals erred in concluding that "[a] trial court has the inherent power to appoint counsel to represent an indigent defendant" irrespective of the current statutory framework of the Public Defender and OADC statutes. *Hodges,* 134 P.3d at 423 (*citing Stern v. County Court,* 773 P.2d 1074, 1077 (Colo.1989)). *Stern* was decided prior to the enactment of the OADC statutes in 1996 and therefore does not control the outcome of this case. By establishing the OADC as the agency to provide

not apply to the trial court's duty to appoint counsel from the OADC list. A trial court, without exception, must appoint an attorney from the OADC list where such a list exists.

**5.** Section 21–2–105(1) further provides:

As a condition of such placement on the approved list, the contracting attorney or investigator shall agree to provide services based on the terms to be established in a contract, at

either a fixed fee or the hourly rate for reimbursement set by the supreme court. Terms of the contract shall be negotiated between the alternate defense counsel and the contract attorney or investigator. Contracts made with an attorney shall specify that the services shall be provided subject to the Colorado rules of professional conduct.

counsel for indigent criminal defendants where the Public Defender has a conflict, the General Assembly limited the inherent authority of the trial court to make such appointments.

Hence, the district court erred when it appointed Pernell to represent Hodges through the OADC. Pernell was not eligible for an OADC appointment because he was not on the list of OADC-approved counsel and had no contract with the OADC. Having determined that the trial court erred in appointing an attorney to Hodges in violation of the OADC statute, we turn to the issue of remedy.

## IV. Remedy

■ While the court of appeals applied plain error analysis, Hodges urges us to hold that the district court's error constitutes structural error warranting automatic reversal of his conviction.

■ Plain error analysis applies to "trial errors," which are "errors in the trial process itself." *People v. Miller*, 113 P.3d 743, 749 (Colo.2005) (*quoting Neder v. United States*, 527 U.S. 1, 8–9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)). Plain error is a trial error that affects the substantial rights of the accused and so undermines the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Id.* at 750. On the other hand, structural error analysis applies to fundamental errors "which affect the framework within which the trial proceeds." *People v. Fry*, 92 P.3d 970, 980 (Colo.2004) (internal quotation omitted).

■ The OADC statute and its accompanying Chief Justice directive create an administrative procedure for trial courts to follow when appointing alternate defense counsel. Although indigent criminal defendants have a statutory right to have counsel appointed at the expense of the state under Colorado law, § 18–1–403, C.R.S. (2006),[6] there is no right to have particular counsel appointed. *People v. Cardenas*, 62 P.3d

621, 623 (Colo.2002). Likewise, while the OADC statute is part of the statutory scheme in articles 1 and 2 of title 21 of the Colorado Revised Statutes, a scheme which ensures that indigent defendants will be represented by counsel at the state's expense, the OADC statute does not create a statutory right in defendants with regard to its procedural aspects. Hence, the trial court's appointment of counsel that was not approved by the OADC did not violate any cognizable right of Hodges's. The trial court's error was administrative in nature. It constitutes neither an error in the trial process implicating Hodges's substantial rights and triggering plain error review, nor a fundamental error triggering structural error review. Hence, the plain error and structural error doctrines do not apply in this case.

By requesting that we reverse his conviction, Hodges is requesting the remedy that he would attain had his Sixth Amendment right to counsel been violated. While Hodges states that he does not raise an ineffective assistance of counsel claim in this appeal, he essentially argues that his counsel's performance was substandard and violates this constitutional right. We do not reach the issue of whether Hodges's Sixth Amendment right to effective assistance of counsel was violated, both because Hodges technically asserts that he is not bringing such a claim in this appeal, and because such a claim is appropriately brought in post-conviction proceedings under Crim. P. 35(c) and not on direct appeal. *Ardolino v. People*, 69 P.3d 73, 77 (Colo.2003). Our opinion does not preclude Hodges from raising an ineffective assistance of counsel claim in Rule 35(c) proceedings.

Notably, Hodges was represented by counsel throughout his trial. Even though Pernell was not on the OADC list of approved counsel, he was a licensed attorney. The fact that Pernell was later sanctioned for ethical misconduct unrelated to Hodges's case does not necessarily mean that he did not provide competent representation in this case. While this Court has never decided the issue, a

---

**6.** Section 18–1–403 provides:
[A]ll indigent persons who are charged with or held for the commission of a crime are entitled to legal representation and supporting services

at state expense, to the extent and in the manner provided for in articles 1 and 2 of title 21, C.R.S.

majority of courts have rejected a per se rule that an attorney has provided ineffective assistance to a criminal defendant even when an attorney is suspended or disbarred during a criminal defendant's trial. *E.g., United States v. Stevens,* 978 F.2d 565, 567–68 (10th Cir.1992); *People v. Kenny,* 30 P.3d 734, 743 (Colo.App.2000) (listing federal and state cases rejecting a per se rule in favor of a case-by-case inquiry).

Hence, we do not disturb Hodges's conviction based on the trial court's erroneous appointment of counsel who was not on the OADC list of approved attorneys.

## V.  Conclusion

We hold that the trial court violated the mandate of the OADC statute when it appointed alternate defense counsel who was not on the OADC's list of approved attorneys. Because Hodges was represented by counsel throughout his trial, however, the trial court violated no cognizable right of Hodges's under the OADC statute. Hence, albeit on different grounds, we affirm the judgment of the court of appeals.

Justice EID does not participate.