**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**David K. SIMON, Defendant–Appellant.**

**No. 01CA1183.**

Colorado Court of Appeals,
Div. II.

Feb. 12, 2004.

As Modified on Denial of Rehearing
May 13, 2004.

Certiorari Denied Nov. 8, 2004.

---

§ 24–51–1105, C.R.S.2002.

Ken Salazar, Attorney General, Lauren Edelstein Park, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Karen Taylor, Deputy State Public Defender, Martin Gerra, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, David K. Simon, appeals the judgment of conviction entered upon jury verdicts finding him guilty of one count of inducement of child prostitution, one count of patronizing a prostituted child, ten counts of sexual assault on a child by one in a position of trust, and ten counts of sexual assault on a child by one in a position of trust as part of a pattern of abuse. He also appeals his sentence. We affirm the judgment, vacate the sentence, and remand for resentencing.

The victim was a fifteen-year-old male with a history of drug abuse. He lived in the same neighborhood as defendant. The victim offered defendant oral sex in return for money, which defendant accepted, and they became involved in an ongoing homosexual relationship. When the victim's parents moved out of the neighborhood, the victim began living with defendant. The victim's parents apparently consented to this living arrangement, which lasted for approximately one and a half years until the victim discontinued the relationship, moved out, and filed charges against defendant.

## I.

■ Defendant first contends a potential juror should have been disqualified as a matter of law because she was employed by the United States Environmental Protection Agency (EPA), which defendant maintains is a public law enforcement agency. We disagree.

■ A trial court must sustain a challenge for cause if a juror is a compensated employee of a public law enforcement agency or a public defender's office. Section 16–10–103(1)(k), C.R.S.2003; Crim. P. 24(b)(1)(XII). No actual bias need be shown to sustain such a challenge for cause, and bias is implied. *People v. Manners,* 708 P.2d 1391 (Colo.App. 1985); *see People v. Rhodus,* 870 P.2d 470 (Colo.1994).

As a threshold matter, defendant does not contend that "all employees of the EPA would necessarily be employees of a public law enforcement agency." However, if the EPA were a public law enforcement agency, all its employees, regardless of their positions, would be disqualified under the statute. *See People v. Rhodus, supra; see also People in Interest of R.A.D.,* 196 Colo. 430, 586 P.2d 46 (1978)(prospective juror, employed as security guard for the Colorado Bureau of Investigation, disqualified under statute); *People v. Manners, supra* (under statute, actual function of an employee of a law enforcement agency is irrelevant); *People v. Scott,* 41 Colo.App. 66, 583 P.2d 939 (1978)(bakers and counselors employed by the state prison are within scope of statute).

The statute does not define the term "public law enforcement agency." The term has been interpreted to include municipal police departments, county sheriff's offices, the Colorado Bureau of Investigation, and the Colorado Department of Corrections. *See People v. Urrutia,* 893 P.2d 1338 (Colo.App.1994) (collecting statutes and cases). But we are aware of no Colorado authority that has considered the question of whether the EPA is a public law enforcement agency under § 16–10–103(1)(k) or Crim. P. 24(b)(1)(XII).

In *People v. Urrutia, supra,* a division of this court considered whether a prospective juror employed as a security officer at the Rocky Mountain Arsenal, an Army facility controlled by the United States Department of Defense (DOD), was statutorily ineligible for jury service under § 16–10–103(1)(k). The division looked to the DOD's function to maintain and employ armed forces to defend and secure the United States' interests against foreign and domestic enemies. *People v. Urrutia, supra,* 893 P.2d at 1345; *see* 32 C.F.R. § 368.3 (2003).

The *Urrutia* division concluded the DOD was not a prosecutorial or law enforcement arm of the government, distinguishing it from an agency such as the Department of Corrections, "which has as an explicit statutorily mandated purpose, inter alia, to enforce the peace and to arrest violators." *People v. Urrutia, supra,* 893 P.2d at 1345.

The fact that the DOD performed activities similar to law enforcement, such as conducting investigations and searches, did not transform the DOD into a law enforcement arm of the government. The *Urrutia* division explained that "simply because a state or federal agency holds investigative powers or has contact with law enforcement personnel does not render the agency a 'public law enforcement agency' within the meaning of the statute." *People v. Urrutia, supra,* 893 P.2d at 1345.

Similarly, in *People v. Zurenko,* 833 P.2d 794 (Colo.App.1991), a division of this court held that neither the Colorado Department of Social Services (DSS) nor the federal Equal Employment Opportunity Commission (EEOC) was a law enforcement agency under the statute. The division examined DSS's originating statute, which characterized it as a public assistance and welfare organization with responsibilities including administering various statutory plans for assistance payments, food stamps, health and medical assistance, child welfare services, rehabilitation, and programs for the aging. *See* § 26–1–109, C.R.S.2003. DSS also had authority to investigate complaints of abuse.

The division also examined the EEOC's originating statute, which characterized the agency as an "investigatory and conciliatory organization." *People v. Zurenko, supra,*

833 P.2d at 796; *see* 42 U.S.C. § 2000e, et seq. (2003).

In reaching its conclusion, the *Zurenko* division reasoned that neither agency had "statutory authority to arrest or prosecute offenders." *People v. Zurenko, supra,* 833 P.2d at 796; *see People v. Rhodus, supra* (county officer who had ongoing professional relationship with and was represented by the district attorney's office was not disqualified by statute); *People v. Topping,* 764 P.2d 369 (Colo.App.1988)(no evidence supported assertion that State Department of Administration was a public law enforcement agency), *aff'd,* 793 P.2d 1168 (Colo.1990); *People v. Rogers,* 690 P.2d 886 (Colo.App.1984)(firefighter at Rocky Mountain Arsenal not an employee of a public law enforcement agency).

Here, the jury questionnaire asked for information regarding "[l]aw enforcement experience and/or military experience, if any." The juror stated on the questionnaire that she was employed as a librarian by the United States Environmental Protection Agency's National Enforcement Investigations Center and that she "provide[d] support to environmental enforcement."

When the trial court later inquired, the juror stated that she did not "actually enforc[e] any code [or] regulation or law," but "provide[d] information which helps an investigator build cases." There was no further inquiry or statements about her employment.

At the time of its formation, the EPA's principal roles and functions included: (1) establishing and enforcing environmental protection standards consistent with national environmental goals; (2) conducting research on the adverse effects of pollution and on methods and equipment for controlling it, gathering information on pollution, and using this information to strengthen environmental protection programs and recommend policy changes; (3) assisting others, through grants, technical assistance, and other means, in arresting pollution of the environment; and (4) assisting in developing and recommending to the President new policies for the protection of the environment. *See* 42 U.S.C. § 4321, Message of the President, July 9, 1970; 42 U.S.C. § 4331(a).

The EPA maintains offices for both criminal investigation and civil enforcement. *See* 42 U.S.C. § 4321; *see also Bravos v. Environmental Protection Agency,* 324 F.3d 1166 (10th Cir.2003)(discussing agency's enforcement duties). The EPA may also designate law enforcement officers to investigate criminal violations of a law administered by the EPA, carry firearms, execute and serve warrants, and make arrests for offenses against the United States. See 18 U.S.C. § 3063 (2004).

However, even in light of the EPA's statutory authority to arrest or prosecute offenders, we nonetheless conclude the EPA is distinguishable from other entities deemed to be public law enforcement agencies under the statute. The conclusion urged by defendant would require trial courts to exclude compensated employees of numerous other public agencies charged primarily with regulation of civil matters, but which also have incidental penal enforcement authority. This conclusion would significantly enlarge the scope of persons unavailable for jury service in a manner that, in our view, was not contemplated by the General Assembly.

We therefore conclude the EPA is properly characterized as an investigatory and rule-making body, and not a law enforcement agency for purposes of § 16–10–103(1)(k) or Crim. P. 24(b)(1)(XII). Accordingly, the trial court did not err as a matter of law in denying defendant's challenge for cause on this basis.

## II.

■ Defendant next contends there was an alternative basis for excusing the same juror for cause, and the trial court abused its discretion in failing to do so. Defendant relies on the potential juror's statement that she was molested when she was a young child and that "[m]aybe sympathy for the victim would not allow [her] to be impartial." We perceive no abuse of discretion by the court.

To ensure a defendant's fundamental right to a trial by jurors who are fair and impartial, the trial court must exclude prejudiced or biased persons from the jury. Section 16–

10–103(1), C.R.S.2003; *People v. Moya*, 899 P.2d 212 (Colo.App.1994). A trial court must sustain a challenge for cause if the prospective juror shows enmity or bias towards the defendant or the state or acknowledges a previously formed or expressed opinion regarding the guilt or innocence of the defendant. Section 16–10–103(1)(j), C.R.S.2003; *People v. Lefebre*, 5 P.3d 295 (Colo.2000); *see* Crim. P. 24(b)(1)(X).

▮ Actual bias includes beliefs grounded in the juror's personal knowledge, personal relationships, and feelings regarding the race, religion, ethnic group, or other group to which the defendant belongs. But the court is not required to dismiss a prospective juror because he or she has indicated a possible source of bias. A prospective juror who makes a statement suggesting actual bias may sit on the jury if he or she agrees to set aside any preconceived notions and make a decision based on the evidence and the court's instructions. *People v. Lefebre, supra.*

▮ The trial court is afforded considerable deference in ruling on a challenge for cause because such decisions turn on an assessment of the juror's credibility, demeanor, and sincerity in explaining his or her state of mind. We may not overturn such a decision unless the trial court manifestly abused its discretion. *People v. Lefebre, supra; People v. Strean*, 74 P.3d 387 (Colo.App.2002).

▮ The trial court may give considerable weight to a potential juror's statement that he or she can fairly and impartially serve on the case. If the trial court has genuine doubt about a juror's ability to be impartial, the court should resolve the doubt by sustaining the challenge and excusing the juror. *People v. Luman*, 994 P.2d 432 (Colo.App. 1999). However, if the trial court is satisfied a potential juror will render a fair and impartial verdict according to the law and the evidence submitted at trial, that person should not be disqualified. Section 16–10–103(1)(j); *People v. Sandoval*, 733 P.2d 319 (Colo.1987); *People v. Woellhaf*, 87 P.3d 142, 2003 WL 21403159 (Colo.App. No. 00CA2351, June 19, 2003).

In this case, the juror "expressed some concern about sympathy for the complaining witness." She stated, "Intellectually and [in] principle, I believe in the presumption of innocence," but "[I] might have feelings of sympathy to the victim." She further stated she could find defendant not guilty if the People could not satisfy their burden of proof.

In response to the prosecutor's questions, the juror stated that she understood and supported a defendant's presumption of innocence, she "could listen to the evidence and make an impartial decision," the decision would be "very difficult for any of us who are in this jury," and, as a mother, she had "sympathy for children." She also said she could find defendant not guilty even if she felt sympathy for the victim, but did not believe his testimony, and that she would find defendant guilty only if she "believed the evidence put forth by the People."

During her discussion with defense counsel, the juror agreed she would try to look at this case objectively, but that her past experiences would stick with her emotionally and "the problem is the taking advantage of by an older person of a younger person." The juror stated, "I would want to be a good citizen and I want to make good decisions and I would want to be rational about it. But as I said, when you ask about feelings, I think that I have a feeling that is sympathy to victims. And in this—I guess in looking at this, I see youth as being in a position of being a victim." However, the juror admitted she would "have different feelings about responsibilities," be better able to put aside her feelings, and be a "better juror" in a case that did not involve sexual victimization.

Defendant's motion to remove her for cause was denied without specific findings. Defendant later removed her by peremptory challenge and exercised all his peremptory challenges.

Defendant maintains that the juror was biased in favor of the People because of her statement that she would "only" find defendant guilty if she believed the evidence put forth by the People, as opposed to defendant. But she stated that in spite of her bias as a mother and a victim of sexual molestation,

she would base her decision on the evidence presented and would be able to find defendant not guilty if it were not proved beyond a reasonable doubt.

We therefore perceive no abuse of discretion by the trial court in denying defendant's challenge for cause as to this juror.

## III.

■ Defendant next contends that another potential juror should have been disqualified for cause because of her stated views displaying prejudice against homosexuals and because her experience as a victim of sexual molestation precluded her from being impartial. We perceive no manifest abuse of discretion.

In the questionnaire, this juror stated that she had been sexually fondled by her mother's boyfriend when she was fifteen years old, and that she did not have any strong religious, moral, or other feelings regarding homosexuality which would affect her ability to be fair in this case. During voir dire, the trial court asked her whether there was anything about "the situation in your background a while ago" that affected her ability to be impartial, and she said there was not.

However, when the prosecutor asked her how it made her feel when she learned the case involved allegations of a homosexual relationship, she said it made her feel "sick." She explained that her belief system "says homosexuality is wrong," but that it would not enter into her consideration of this case. The prosecutor asked the jurors generally whether they thought homosexuality itself was a crime, could convict defendant simply based on the fact of a homosexual relationship, or had a problem with this issue. Neither this juror nor any others responded affirmatively.

The juror later admitted that being a juror on this case "wouldn't be [her] top ten things to do" and that the case would present "emotional problems," but that she was nevertheless willing to undertake jury service. She explained that her strong feeling "c[ame] from [the] sexual abuse on me when I was 15 years old," but she was "[a] person who likes rules," would put her feelings aside, refrain from allowing them to enter into her deliberation, and abide by the judge's instructions.

The juror elaborated on her religious beliefs, stated that her beliefs would not enter into her deliberation in this case, and added, "I don't write the laws and we'll hear what the law covers. And it's again, a case of finding out whether the law was broken."

Defendant's motion to discharge this juror for cause was denied without specific findings by the trial court. Defendant later removed her by peremptory challenge, and as noted earlier, he exhausted all his peremptory challenges.

We reject defendant's argument that there was an obvious error in the transcription which attributed a rehabilitative statement to this juror. In our examination of the transcript, defense counsel concluded his examination of another potential juror, then specifically addressed this juror by name, and referred to her previous statement to the prosecutor. Thus, we perceive no obvious error in the transcription.

Also, contrary to defendant's contention, we conclude this case is distinguishable from *People v. Luman, supra.* In *Luman,* the prospective juror disclosed her inability to view the evidence in the case in an objective and unbiased manner, was not later rehabilitated, and never stated she could be fair and impartial.

Further, the record reveals nothing in this juror's statements that was palpably incredible or totally unbelievable. We therefore reject defendant's argument that the juror's statements were incredible as a matter of law. *See People v. Parks,* 749 P.2d 417 (Colo.1988)(trial court may not reject testimony as incredible as a matter of law unless the witness's testimony is palpably incredible or totally unbelievable, such that it conflicts with nature or fully established or conceded facts); *People v. Ramirez,* 30 P.3d 807 (Colo. App.2001)(same); *see also People v. Strean, supra* (prospective juror stated childhood abuse was a possible source of bias, but could be fair, notwithstanding doubt concerning her ability to be fair).

■ Relying on *Beeman v. People*, 193 Colo. 337, 565 P.2d 1340 (1977), defendant also contends the trial court erred in accepting the juror's assurance that she could be impartial. We disagree.

In *Beeman*, the defendant was charged with rape and deviate sexual intercourse. During trial, one of the jurors informed the court that she might know the defendant. She stated the defendant made a sales call to her daughter's home, "talked about politics and the future of the world," and upset her daughter, which prompted the juror to call the salesman's employer to complain. *Beeman v. People, supra*, 193 Colo. at 339, 565 P.2d at 1341. The juror also believed that a knife missing from her daughter's home might have been used in the alleged rape. The juror nonetheless stated these beliefs would not affect her ability to decide the case fairly. The defendant moved for a mistrial, which the trial court denied.

The *Beeman* court concluded the trial court should have granted the motion for mistrial and the juror should have been removed. The supreme court observed, "[W]e are not dealing with an opinion or abstract belief in the defendant's guilt or innocence. Rather, we are faced with factors relating to a personal and emotional situation concerning the juror and the accused." *Beeman v. People, supra*, 193 Colo. at 340, 565 P.2d at 1342 (citation omitted). Thus, the court rejected the juror's assurances of her capacity to act impartially, which "cannot compensate for factors which inherently produce prejudice." *Beeman v. People, supra*, 193 Colo. at 340, 565 P.2d at 1342. However, in *Beeman*, the juror's bias was based upon her belief that she had specific knowledge concerning the defendant and the possible source of the crime weapon.

In *People v. Hoskay*, 87 P.3d 194, 196, 2003 WL 22309230 (Colo.App. No. 02CA0394, Oct. 9, 2003), a sexual assault case involving a male victim and defendant, this division considered a challenge for cause to a prospective juror who had a "religious objection against homosexuality." The prospective juror stated that, if she were in the defendant's position, she would be concerned about having a person such as herself on the jury and that

she hoped she would not be selected because of the nature of the case. She also said she did not know how her feelings about homosexuality would affect her judgment. Later, however, she stated she could judge the case based on the evidence, afford the defendant the presumption of innocence despite his sexual orientation, and hear the evidence before deciding whether the defendant had committed an illegal act, rather than judge him on his sexual orientation.

The *Hoskay* division concluded the trial court acted within its discretion in denying the defendant's challenge for cause, because there was no other evidence in the record indicating that the court should have disregarded the prospective juror's assurances. *See also People v. Dembry*, 91 P.3d 431, 2003 WL 22965069 (Colo.App. No. 00CA0798, Dec. 18, 2003)(no abuse of discretion where juror stated bias against homosexuality, but stated belief would not prevent him from judging the case based on the evidence).

Similarly, here, the juror in question told the court she would base her decision on the evidence and the court's instructions on the law, even though her childhood abuse and religious views were possible sources of bias. Although the trial court here was not required to accept the juror's assurances, and other trial courts might have reached a different conclusion, the court nevertheless accepted the juror's assurances.

■ We acknowledge that this juror's comments about homosexuality were troubling, especially given the nature of the case. As stated in *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535, 553 (1996), "[T]his Court is greatly troubled by the fact that jurors who indicated negative personal opinions about the defendant's sexual orientation were permitted to serve over a challenge for cause." Nonetheless, we defer to the discretion of the trial court. See *Gacy v. Welborn*, 994 F.2d 305, 314–15 (7th Cir.1993)(asking jurors whether fact defendant was charged with homosexual conduct prevented them from being fair to either side and whether they could put aside feelings regarding homosexuality in rendering verdict); *State v. Lambert*, 528 A.2d 890 (Me.1987)(asking whether evidence of defendant's homosexuality would af-

fect jurors' ability to decide case fairly and impartially based solely on the evidence and court's instructions); *People v. Viggiani,* 105 Misc.2d 210, 431 N.Y.S.2d 979 (N.Y.City Crim.Ct.1980)(asking whether jurors would be biased for or prejudiced against either party as a result of victim's homosexuality and excusing for cause persons who answered yes); *Stott v. State,* 538 P.2d 1061 (Okla.Crim.App.1975)(asking whether defendant's homosexuality caused jurors to feel animosity or prejudice against him and excusing for cause juror who stated he could not be fair); *State v. Salmons,* 203 W.Va. 561, 509 S.E.2d 842 (1998)(excusing for cause jurors who admitted prejudice against homosexuals, and trial court was not convinced of their ability to put aside bias); *State v. Van Straten,* 140 Wis.2d 306, 409 N.W.2d 448, 453 (Wis.App.1987)(excusing jurors who admitted bias against homosexuality, but finding no abuse of discretion as to those who "honestly professed their ability to be fair"); *see also* Shauna C. Wagner, Annotation, *Examination and Challenge of State Case Jurors on Basis of Attitudes Toward Homosexuality,* 80 A.L.R.5th 469 (2000).

To the contrary, our analysis here, in *Hoskay,* and in *People v. Dembry, supra,* is consistent with the analysis adopted by other courts that have addressed the issue. *See Gacy v. Welborn,* 994 F.2d 305, 314–15 (7th Cir.1993)(asking jurors whether fact defendant was charged with homosexual conduct prevented them from being fair to either side and whether they could put aside feelings regarding homosexuality in rendering verdict); *State v. Lambert,* 528 A.2d 890 (Me.1987)(asking whether evidence of defendant's homosexuality would affect jurors' ability to decide case fairly and impartially based solely on the evidence and court's instructions); *People v. Viggiani,* 105 Misc.2d 210, 431 N.Y.S.2d 979 (N.Y.City Crim.Ct.1980)(asking whether jurors would be biased for or prejudiced against either party as a result of victim's homosexuality and excusing for cause persons who answered yes); *Stott v. State,* 538 P.2d 1061 (Okla.Crim.App.1975)(asking whether defendant's homosexuality caused jurors to feel animosity or prejudice against him and excusing for cause juror who stated he could

not be fair); · *State v. Salmons,* 203 W.Va. 561, 509 S.E.2d 842 (1998)(excusing for cause jurors who admitted prejudice against homosexuals, and trial court was not convinced of their ability to put aside bias); *State v. Van Straten,* 140 Wis.2d 306, 409 N.W.2d 448, 453 (Wis.App.1987)(excusing jurors who admitted bias against homosexuality, but finding no abuse of discretion as to those who "honestly professed their ability to be fair"); *see also* Shauna C. Wagner, Annotation, *Examination and Challenge of State Case Jurors on Basis of Attitudes Toward Homosexuality,* 80 A.L.R.5th 469 (2000).

We therefore conclude the trial court's ruling as to this juror was not manifestly arbitrary, unreasonable, or unfair and therefore may not be disturbed on appeal. *See People v. Luman, supra.*

### IV.

 Finally, defendant contends the trial court erred in concluding it was required to impose consecutive sentences for the ten convictions for sexual assault on a child by one in a position of trust as part of a pattern of abuse. We agree.

The trial court, in its discretion, may impose either concurrent or consecutive sentences as to these charges, but it erred in concluding it was required to impose consecutive sentences. *See People v. Woellhaf, supra; People v. Bobrik,* 87 P.3d 865, 2003 WL 22019761 (Colo.App. No. 01CA0707, Aug. 28, 2003).

Section 18–1.3–406(1)(a), C.R.S.2003, as pertinent here, provides that a person convicted of two or more separate crimes of violence arising out of the "same incident" must be sentenced for such crimes so that sentences are served consecutively rather than concurrently.

At the sentencing hearing, defense counsel contended that each conviction was based on separate acts and did not arise out of the same incident. But the trial court "specifically f[ound] in this case that the statute does require consecutive sentencing on [these] counts." The court also made findings as to certain circumstances of the case. However,

it did not directly address whether the relevant crimes arose out of the same incident.

The record is unclear regarding which statute the trial court relied on, and there is no finding that the relevant crimes arose out of the same incident. Further, the jury answered a special interrogatory as to each of the relevant counts and in each interrogatory found defendant committed the act as a part of a pattern of sexual abuse. However, as to nine of these charges, it found defendant "committed the same act of sexual contact described by [the victim] between and including July 1, 1998 and August 1, 1999. This act is separate and distinct from any other act for which we found [defendant] guilty."

Accordingly, we conclude consecutive sentences were not required under § 18–1.3–406(1)(a). *See People v. Bobrik, supra.*

Contrary to the People's contention, *People v. Beyer,* 768 P.2d 746 (Colo.App.1988), and *People v. Trujillo,* 860 P.2d 542 (Colo. App.1992), do not require a different result.

In *Beyer,* a division of this court rejected the defendant's argument that the victim was shot, transported, and abandoned in separate incidents, precluding consecutive sentencing under the crime of violence statute then in effect. The division concluded these crimes, which occurred on the same day, were related and could be considered a single incident for sentencing purposes.

At issue in *Trujillo* was the propriety of consecutive sentencing under the crime of violence statute for two aggravated robbery charges. These convictions were based on the robbery of six properties within one month. The division remanded the case for the trial court to determine whether the crimes arose out of the same incident.

Here, however, defendant was charged with acts that occurred over thirteen months, and the jury found the acts supporting each pattern charge were separate and distinct from the acts supporting any other pattern charge.

Because it is likely that the trial court's erroneous assumption of what the law required influenced its decision to impose the 112–year sentence, we must vacate the sentence in its entirety and remand for resentencing. Also, given our conclusion, we need not address defendant's contention that *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), requires another result.

The judgment is affirmed, the sentence is vacated, and the case is remanded for resentencing.

Judge MARQUEZ and Judge GRAHAM concur.