The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Johnnie Erick ARKO, Defendant–Appellant.

No. 04CA1050.

Colorado Court of Appeals, Div. VI.

Oct. 5, 2006.

Rehearing Denied Nov. 2, 2006.

§ 24–51–1105, C.R.S.2006.

714

John W. Suthers, Attorney General, Cheryl Hone, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Keyonyu X O'Connell, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge J. JONES.

Defendant, Johnnie Erick Arko, appeals his judgment of conviction by a jury for attempted reckless manslaughter and the trial court's corresponding five-year aggravated sentence. We affirm.

## I. Background

According to the prosecution's evidence, defendant and the victim periodically dated each other. On April 6, 2003, during a telephone conversation, the victim told the defendant that they should see less of each other. Following a later telephone conversation, during which the victim told defendant not to come to her house, defendant entered the victim's house through the basement. Defendant surprised the victim in her living room and choked her during an altercation which lasted between thirty and sixty minutes. During the altercation, defendant

shouted repeatedly that the victim needed to die that night. The victim was unable to breathe and struggled to speak to defendant. Defendant periodically loosened his grip, only to resume choking the victim.

Defendant finally released his grip and began talking to the victim, during which time she was able to locate her purse, keys, and cell phone. Defendant then told the victim to brush her teeth because they were bloody. The victim was able to convince defendant to brush his teeth as well, which gave her the opportunity to escape. The victim drove to the home of her brother-in-law.

The victim's brother-in-law called the police. The victim went to the hospital for treatment. She experienced soreness in her neck and difficulty swallowing, and she sustained various bruises, abrasions, scratches, fingernail marks, cuts, and other markings all over her body.

Police arrested defendant that night at the victim's home. Defendant admitted to police that he choked the victim that night, but explained that he was merely demonstrating what some men had done to him in a bar earlier that day. Defendant later claimed that he and the victim began to argue after he arrived at the victim's house that night, and that he placed his hand over her mouth to stop her from screaming at him. Defendant claimed that his hand then "went" from her mouth to her throat, where he held her for between two and four minutes.

Defendant was initially charged with attempted first degree murder and first degree burglary. The charges were later amended to attempted second degree murder, in violation of §§ 18–2–101 and 18–3–103(1)(a), C.R.S.2006; second degree burglary with intent to commit second degree murder, in violation of § 18–4–203(1), (2)(a), C.R.S.2006; and second degree burglary with intent to commit third degree assault, also in violation of § 18–4–203(1), (2)(a).

The case was tried to a jury. The jury found defendant not guilty of second degree burglary with intent to commit second degree murder and second degree burglary with intent to commit third degree assault. However, the jury was unable to reach a verdict on the attempted second degree murder charge. The trial court declared a mistrial on that charge.

The attempted second degree murder charge was retried to another jury. The jury was instructed on the attempted second degree murder charge and the lesser included offense of attempted reckless manslaughter. The jury found defendant not guilty of attempted second degree murder and guilty of attempted reckless manslaughter.

The trial court sentenced defendant to five years in the Department of Corrections, which was in the aggravated range for the offense of conviction. Sections 18–1.3–401(1)(a)(V)(A), (6), 18–2–101(4), 18–3–104(2), C.R.S.2006.

## II. Discussion

### A. Right to Counsel

■ Defendant argues that the trial court violated his constitutional right to effective assistance of counsel by requiring him either to represent himself or to retain counsel he believed to be ineffective and by failing to adequately inquire into the reasons for his dissatisfaction with his court-appointed attorney. We disagree.

Before his first trial, defendant filed a pro se motion for discovery materials, claiming that his attorney had allowed him to view those materials for only five hours. The trial court denied the motion, noting that defendant was represented by counsel. Shortly thereafter, defendant filed a pro se motion to dismiss the charges against him based on a violation of his right to a speedy trial. He claimed in his motion that his attorney had prevented him from entering a not guilty plea at the initial advisement of the charges (which would have started the speedy trial clock running), and had failed to investigate a crucial witness, whom defendant did not identify. The trial court denied the motion as "without merit" the same day it was filed.

At the pretrial conference, the trial court informed defendant that he could not file motions on his own behalf because he was represented by an attorney, but that he had the right to represent himself if he so chose. The trial court then asked defendant, "Now,

is there an issue about effective assistance of counsel?" Defendant reiterated his concerns that his attorney had failed to provide him with adequate time to review discovery and failed to investigate a key witness. The trial court responded:

> All right. As I indicated before that motion that I read has no merits [sic], so that's dismissed.
>
> I need to know whether or not there is an issue as to effective assistance of counsel. And if you want to take that up right now, Mr. Arko, you need to understand that any conversations that you have with your attorney are privileged. And if you are going to make allegations about your attorney's ineffectiveness you are, in fact, waiving that privilege.... And I need to know whether or not that is an issue at the outset.

Defendant replied that there was an issue as to ineffective assistance of counsel and noted again, generally, that his rights had been denied, and that his attorney had prevented him from entering a not guilty plea at the earliest possible date.

At that point, the trial court told defendant that his counsel had followed the usual procedure regarding the timing of the plea and that his counsel, who was very experienced, was entitled to make decisions on how to handle the case. Defendant merely continued to argue that he had been denied his right to a speedy trial.

The trial court then told defendant that if he wanted to file any motions himself, he would have to represent himself. The trial court asked defendant whether he wanted to represent himself. Defendant responded, "I don't think I should be put in that situation where you have to either represent myself or to feel not happy with my representation, so I guess the ultimatum is, yeah, I still would like to keep [defense counsel] as my counsel, yes." The trial court replied:

> Okay. Well, I'm not putting you in that position, I'm not giving you ultimatums. So that's what you need to understand. All I'm telling you, sir, is you've got an attorney, your attorney files motions. If there are motions filed by you, *other than having to do with your attorney,* I'm not entertaining them.

(Emphasis added.) Defendant said, "Okay.... That's fine." He did not thereafter file a motion to have a different attorney appointed to represent him, but continued to be represented through the remainder of the proceedings, including two trials, by his originally appointed counsel.

▪ A criminal defendant has a constitutional right to the effective assistance of counsel, as well as the alternative right of self-representation. *People v. Arguello,* 772 P.2d 87, 92 (Colo.1989). The court may not give a defendant an ultimatum that forces him to choose between these two rights. *People v. Chavez,* 621 P.2d 1362, 1365 (Colo. 1981).

▪ Here, the trial court made clear that it was not giving defendant such an ultimatum. Rather, the trial court merely informed defendant that so long as he was represented by counsel, he could not file pro se motions. A defendant does not have a constitutional right to "hybrid representation"—that is, representing himself while he is also represented by court-appointed counsel. *Arguello, supra,* 772 P.2d at 92. Thus, the trial court's explanation to defendant of the circumstances in which he could file pro se motions was correct.

▪ Nor did the trial court err in failing to inquire further into the reasons defendant believed his counsel was ineffective.

▪ "[W]hen an indigent defendant voices objections to court-appointed counsel, the trial court has the obligation to inquire into the reasons for the dissatisfaction." *Arguello, supra,* 772 P.2d at 94. If the defendant establishes " 'good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict,' " then the court must provide defendant with a new attorney. *Arguello, supra,* 772 P.2d at 94 (quoting *McKee v. Harris,* 649 F.2d 927, 931 (2d Cir.1981)). However, if the trial court determines that substitution of counsel is not warranted, the court can insist that the defendant make a choice between proceeding with court-appointed counsel and

representing himself. *Arguello, supra,* 772 P.2d at 94. In such a scenario, a defendant must be given a "clear choice" between retaining present counsel and waiving his right to counsel. *Arguello, supra,* 772 P.2d at 94 (quoting *United States v. Padilla,* 819 F.2d 952, 955 (10th Cir.1987)).

Under the circumstances of this case, the trial court was not obligated to inquire further as to defendant's dissatisfaction with his counsel because defendant had fully articulated the disputes with his counsel in his pro se motions and at the pretrial conference. Those disputes pertained to trial preparation and other matters of strategy and tactics. They did not show a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict so as to justify the appointment of new counsel. *See People v. Hodges,* 134 P.3d 419, 425–26 (Colo.App.2005) (*cert. granted* Apr. 24, 2006); *People v. Garcia,* 64 P.3d 857, 863–64 (Colo.App.2002). And defendant has not identified any previously undisclosed matters that would have been revealed upon further inquiry. *See Hodges, supra,* 134 P.3d at 426.

### B. Challenges to Prospective Jurors

Defendant argues that the trial court erroneously denied his challenges for cause with respect to three prospective jurors at his second trial: J.M., V.W., and E.M. He used peremptory challenges to excuse each of these prospective jurors and exhausted his remaining peremptory challenges. We perceive no error.

 Criminal defendants have a fundamental constitutional right to a fair and impartial jury. *Morrison v. People,* 19 P.3d 668, 673 (Colo.2000); *People v. Luman,* 994 P.2d 432, 434 (Colo.App.1999). In accordance with this right, the General Assembly has set forth certain grounds on which the trial court is required to dismiss a prospective juror for cause. Section 16–10–103(1), C.R.S.2006. One such ground is actual bias. Section 16–10–103(1)(j), C.R.S.2006, provides:

(1) The court shall sustain a challenge for cause on one or more of the following grounds:

. . .

(j) The existence of a state of mind in the juror evincing enmity or bias toward the defendant or the state; however, no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial. . . .

This provision contemplates " 'a state of mind that prevents a juror from deciding the case impartially and without prejudice to a substantial right of one of the parties.' " *Carrillo v. People,* 974 P.2d 478, 486 (Colo.1999) (quoting *People v. Macrander,* 828 P.2d 234, 238 (Colo.1992)). Where actual bias is present, dismissal for cause is required. *See* § 16–10–103(1)(j); *Morrison, supra,* 19 P.3d at 673; *Luman, supra,* 994 P.2d at 434.

 When a defendant challenges a prospective juror for cause on the basis of actual bias, the defendant bears the burden of " 'demonstrat[ing], through questioning, that the potential juror lack[s] impartiality.' " *People v. Rodriguez,* 914 P.2d 230, 263 (Colo.1996) (quoting *Wainwright v. Witt,* 469 U.S. 412, 423, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985)).

 A trial court's denial of a defendant's challenge to a prospective juror for cause will only be reversed where the trial court abused its discretion. *Carrillo, supra,* 974 P.2d at 485. A trial court abuses its discretion in ruling on a challenge for cause only where its decision is manifestly arbitrary, unreasonable, or unfair. *People v. Montoya,* 141 P.3d 916, 919 (Colo.App.2006).

 When determining whether a trial court abused its discretion in ruling on a challenge for cause, the appellate court must review the entire voir dire of the prospective juror. *Carrillo, supra,* 974 P.2d at 486 (citing *People v. Abbott,* 690 P.2d 1263, 1267 (Colo.1984)). In so doing, the appellate court must be mindful that the trial court is accorded a great deal of discretion in determining whether actual bias is present " 'primarily because such challenges require an

assessment of the prospective juror's credibility, demeanor, and sincerity in explaining his or her state of mind and because the trial court is in a preferred position to evaluate those factors,'" *Carrillo, supra,* 974 P.2d at 486 (quoting *Macrander, supra,* 828 P.2d at 238), and that the abuse of discretion standard also "serves to discourage an appellate court from second-guessing those judgments based on a cold record." *Carrillo, supra,* 974 P.2d at 486. Hence, a trial court's ruling on a challenge for cause will be reversed only if there is no evidence in the record to support it. *People v. Richardson,* 58 P.3d 1039, 1042–43 (Colo.App.2002).

### 1. Prospective Juror J.M.

When the court first questioned J.M. during voir dire, she was unsure about whether she could be fair. J.M. stated, "I just don't approve of assault on anybody; women on men or men on women. I just—I don't think that there is a reason for it." J.M. also stated, however, that she would try to be fair. When the trial court asked J.M. whether she could listen to the evidence presented during trial and apply the law to the evidence, J.M. responded, "Sure, I would try to do that, yeah."

When defendant's counsel attempted to explain the prosecution's burden of proof to J.M., and asked her whether she understood that concept, she indicated that she was confused. Defendant's counsel then tried to explain the requisite mental state that the People must prove. J.M. replied, "Well, if he has got his hands around her throat—excuse me, but isn't that kind of telling you exactly what he had in mind?" Defendant's counsel then asked J.M. whether she could be fair to defendant "based on what the charge is and based on the statement of the case" by the prosecutor. She responded, "No, I can't, no." She also indicated that she had made up her mind about the case.

Defendant's counsel challenged J.M. for cause. The trial court questioned J.M. again about her ability to be fair in the case, attempting to explain more clearly the duties of a juror. In the course of that colloquy, J.M. indicated that she understood the burden of proof, she understood the presumption

of innocence, and she would not have any problem carrying out the duties of a juror. The trial court then denied defendant's counsel's challenge of J.M. for cause.

The mere expression of some concern by a prospective juror regarding a certain aspect or issue of a case should not result in automatic dismissal of that prospective juror for cause. *Rodriguez, supra,* 914 P.2d at 263 (citing *People v. Drake,* 748 P.2d 1237, 1244 (Colo.1988)); *People v. Sandoval,* 733 P.2d 319, 321 (Colo.1987). Likewise, dismissal for cause is not required merely because a prospective juror answers questions in a way that might indicate some bias, prejudice, or preconceived notion. *Rodriguez, supra,* 914 P.2d at 263; *People v. Simon,* 100 P.3d 487, 492 (Colo.App.2004); *People v. Lopez,* 97 P.3d 277, 279 (Colo.App.2004); *People v. Strean,* 74 P.3d 387, 390 (Colo.App.2002).

Rather, the decisive question is whether it is possible for the prospective juror to set aside her preconceived notions and decide the case based on the evidence and the court's instructions. *People v. Lefebre,* 5 P.3d 295, 301 (Colo.2000); *Lopez, supra,* 97 P.3d at 279; *Strean, supra,* 74 P.3d at 390–91; *People v. Tally,* 7 P.3d 172, 179 (Colo.App.1999). In determining whether a prospective juror can do so, the trial court should consider all available facts, including the prospective juror's assurances of fairness and impartiality. *Rodriguez, supra,* 914 P.2d at 263; *People v. Gilbert,* 12 P.3d 331, 334 (Colo.App.2000).

Here, J.M. indicated to defendant's counsel that her feelings about assault could cause her to be biased by leading her to decide prematurely defendant was guilty. However, she did so only after expressing confusion about the principles governing jurors' obligations based on defendant's counsel's questions. After the trial court more clearly explained the concepts of the burden of proof and the presumption of innocence, she indicated that she understood those concepts, and the trial court was satisfied with her assurances.

The trial court's assessment of J.M.'s answers is accorded great discretion because " '[t]he trial judge is the only judicial

officer able to assess fully the attitudes and state of mind of a potential juror by personal observation of the significance of what may linguistically appear to be inconsistent or self-contradictory responses to difficult questions.'" *Carrillo, supra,* 974 P.2d at 487 (quoting *Sandoval, supra,* 733 P.2d at 321); *see also Morrison, supra,* 19 P.3d at 672–73. "It is the trial court's prerogative to give considerable weight to a potential juror's statement that [s]he can fairly and impartially serve on the case." *Sandoval, supra,* 733 P.2d at 321.

On this record, we cannot conclude that the trial court abused its discretion in denying defendant's challenge of J.M. for cause. *Cf. Morrison, supra,* 19 P.3d at 673 (upholding trial court's refusal to strike prospective juror for cause where, despite prospective juror's alleged predisposition to find defendant guilty, prospective juror stated that she understood the presumption of innocence, that her beliefs about the crime would "probably not" interfere with her duties as a juror, and that she believed she could base her decision on the evidence presented); *Carrillo, supra,* 974 P.2d at 487 (upholding trial court's refusal to strike prospective juror for cause, despite prospective juror's statement that she assumed when defendants were apprehended that they were guilty, where prospective juror stated she could listen to the evidence presented and decide the case based on the evidence); *Lopez, supra,* 97 P.3d at 279 (trial court properly declined to dismiss prospective juror for cause where juror stated to the court in one part of voir dire that she could be fair and impartial and that she understood the burden of proof and the presumption of innocence, despite the contradictory statements she made later when confused by defense counsel's questions).

### 2. Prospective Juror V.W.

When the trial court first questioned V.W. during voir dire, she stated that she did not want to serve on the jury because she was concerned about missing classes and having to drop out of college. V.W. subsequently revealed that she had been a victim of domestic violence two years earlier, but indicated that she did not think her experience would prevent her from being fair, and that she could be "pretty objective." V.W. then reiterated her concern to the trial court about missing school if she were selected to be a juror.

The prosecutor asked V.W. whether she could treat both sides fairly and base her verdict on the evidence presented and not on her personal experience, and V.W. responded that she could.

Defendant's counsel also questioned V.W. about her ability to be impartial. V.W. indicated that she understood from her study of psychology that "you can't always know when you are being objective and when you are not." She went on to say, however:

> I can be very objective when I need to be, so, um, I'm—I believe that I can look at the evidence and apply it to the case, the law, you know, however you put it. Um, I think I'm pretty objective, and I can analyze everything that is presented to me fairly . . . .

When defendant's counsel asked V.W. specifically whether her personal experience would affect her ability to be fair, V.W. stated:

> Well like I said, I don't know. But I could always do the best, you know, I can try really hard and I probably could. . . . I do have a little doubt. I mean, I want to say that I am going to be completely objective, but I can't say that. You know, I can't just—I mean, I'm not going to be able to say that for sure.

The trial court then asked V.W., "But the bottom line is, ma'am, can you put [your experience] aside and listen to the facts of this case and follow the law?" V.W. replied, "I think so, yeah."

Following this exchange, defendant's counsel requested that V.W. be excused for cause "based upon [V.W.]'s indication that there is some doubt in her mind that she could be fair." The trial court denied the challenge, stating:

> I think she can put [her experience] aside from looking at her. I think there is some hesitancy, but I am fairly confident that being a psychology major, she also seemed to—is recognizing, um, the effects that a

prior incident could have on her. And I think she's confident enough that she could put that aside

. . . .

 The fact that a prospective juror has been the victim of a crime, even one similar to that with which the defendant is charged, does not automatically require that the prospective juror be disqualified from serving on the jury. *Simon, supra,* 100 P.3d at 491–92; *Strean, supra,* 74 P.3d at 391. And, as noted above, a prospective juror's mere expression of doubt about her ability to be impartial is not necessarily a sufficient reason to dismiss that prospective juror for cause. *See Richardson, supra,* 58 P.3d at 1043–44.

When the trial court questioned V.W. about her ability to fulfill her obligations as a juror, she stated that she did not think her experience would prevent her from being fair and that she thought she could be objective. Despite the fact that V.W. was less than 100% certain, these assurances provided an adequate basis for the trial court to determine that V.W. could be fair and impartial. *Cf. Simon, supra,* 100 P.3d at 491–92 (challenge for cause properly denied where prospective juror, who had been victim of similar crime and admitted she might be biased, assured the court that she understood the burden of proof and the presumption of innocence); *Strean, supra,* 74 P.3d at 391 (challenge for cause properly denied where trial court determined that prospective juror, who had been victim of similar crime, for which she was then undergoing counseling, could be fair and impartial, despite the doubts she expressed about her ability to be fair); *People v. Schmidt,* 885 P.2d 312, 314–15 (Colo. App.1994) (challenge for cause properly denied where trial court determined that prospective juror, who had been victim of similar crime, could be fair and impartial and base her decision on the evidence).

### 3. Prospective Juror E.M.

 When the prosecutor questioned E.M. during voir dire, she revealed that she had friends and relatives who had been victims of domestic violence. However, E.M. did not express any concern about her ability to be fair and objective in this case until she was questioned by defendant's counsel. At that point, E.M. stated that it was possible that the experiences of her friends and relatives would influence her judgment in the case. E.M. then stated that she could try to set her experiences aside and make a decision based on the evidence, although she was only ninety percent sure that she could do so.

Defendant's counsel challenged E.M. for cause. The trial court asked E.M. how the experiences of her friends and relatives could affect her ability to be impartial, and about her understanding of the burden of proof. She responded that she thought she could be fair, and that "nothing would really prevent" her from deciding the case based solely on the evidence. Based on those responses, the trial court denied defendant's challenge for cause.

In *Montoya, supra,* a division of this court held that the trial court properly denied a defendant's challenge for cause to a prospective juror whose friend had been a victim of a crime similar to that with which the defendant was charged. The prospective juror admitted that her friend's experience "might" interfere with her ability to assess the evidence rationally; however, she also told the court she understood the burden of proof and could hold the prosecution to its burden on each element of the offense. *Montoya, supra,* 141 P.3d at 919.

Indeed, divisions of this court have routinely upheld the rulings of trial courts denying challenges for cause under circumstances similar to those pertaining to prospective juror E.M. *Cf. People v. Dashner,* 77 P.3d 787, 790 (Colo.App.2003) (court properly refused challenge for cause where prospective juror's son had been recent victim of similar crime and prospective juror expressed uncertainty as to his ability to be impartial, but stated after additional questioning by trial court that he understood burden of proof and would be able to base decision on the evidence), *disapproved of on other grounds by Domingo–Gomez v. People,* 125 P.3d 1043, 1051 n. 3 (Colo.2005); *Richardson, supra,* 58 P.3d at 1043–44 (court properly refused challenge for cause to potential juror whose family friend had been victim of similar crime

723

because potential juror stated that she would do her best to fulfill her duties as a juror and hoped she could be fair, although she was not sure she could be); *People v. Griffin*, 985 P.2d 15, 20–21 (Colo.App.1998) (challenges for cause properly denied where prospective jurors, whose daughter and friend, respectively, had been victims of similar crimes, stated they could follow the court's instructions and base their decisions on the evidence).

After examining the entire voir dire of E.M., we conclude that the trial court did not abuse its discretion in accepting her assurances that she could be a fair and impartial juror.

C. Refusal to Instruct Jury on Lesser Nonincluded Offense

■ Defendant contends that the trial court erred by refusing his trial counsel's request to instruct the jury on the lesser offense of third degree assault. He argues that the trial court was obligated to submit such an instruction to the jury, even though he clearly and repeatedly objected to submission of such an instruction, because his trial counsel asked the court to submit the instruction over his objection. We disagree.

At the conclusion of the presentation of evidence in the second trial, defendant's counsel requested that the trial court instruct the jury on third degree assault as a lesser included offense. The court ruled that third degree assault is not a lesser included offense of attempted second degree murder, but asked defendant's counsel whether he wanted to submit an instruction on third degree assault as a lesser nonincluded offense. *See People v. Skinner*, 825 P.2d 1045, 1046–47 (Colo.App.1991) (discussing distinction between lesser included and lesser nonincluded offenses). Defendant's counsel replied that he did, but that defendant did not. At that point, the following exchange took place:

THE COURT: Mr. Arko, you understand that your attorney wishes to submit a lesser nonincluded offense of Third Degree Assault?

DEFENDANT: Yes, sir.

THE COURT: And my understanding is that you do not want that submitted?

DEFENDANT: Correct.

THE COURT: Okay. And you understand all of the ramifications that—what may occur if that is not submitted?

DEFENDANT: Yes, sir.

THE COURT: And you do not wish me to do that?

DEFENDANT: Correct.

DEFENDANT'S COUNSEL: And I guess, Judge, and I don't mean to disagree with my client, but I would ask over his objection that it would be submitted.

. . .

THE COURT: But the bottom line is, your client does not want that; is that correct?

DEFENDANT'S COUNSEL: That's my understanding, Judge.

THE COURT: Based upon that representation, I am going to go ahead and deny that request for a lesser included of Third Degree Assault for the reasons that I have stated before and the lesser nonincluded. . . .

■ The parties have not directed us to any authority, and we have found none, addressing the specific issue presented here: where a defendant and his attorney disagree about whether a lesser nonincluded offense instruction should be submitted to the jury, and both the defendant and his attorney make their respective positions clear to the court, whose request must the court grant? We conclude that, in the event of such a conflict, the court should accede to the defendant's request.

■ "Defense counsel stands as 'captain of the ship' in ascertaining what evidence should be offered and what strategy should be employed in the defense of the case." *Steward v. People*, 179 Colo. 31, 34, 498 P.2d 933, 934 (1972). As "captain of the ship," defense counsel has broad authority regarding the conduct of the litigation, particularly when it comes to tactical and strategic choices. *Moore v. People*, 174 Colo. 570, 572, 485 P.2d 114, 115 (1971); *People v. Anderson*, 649 P.2d 720, 724 (Colo.App.1982);

*see also People v. Schultheis,* 638 P.2d 8, 12 (Colo.1981) ("Defense counsel is not the alter-ego or mouthpiece of the accused, but is a trained advocate charged with representing an accused within the parameters of the Code of Professional Responsibility and according to his obligations and duties as an officer of the court.").

Accordingly, the supreme court and divisions of this court have recognized the authority of defense counsel to make various decisions contrary to the client's wishes, including: (1) what witnesses to call to support a defense case, *Davis v. People,* 871 P.2d 769, 773 (Colo.1994); *Schultheis, supra,* 638 P.2d at 12; *Moore, supra,* 174 Colo. at 571–72, 485 P.2d at 115; *People v. Bradley,* 25 P.3d 1271, 1275–76 (Colo.App.2001); (2) whether to waive a defendant's right to a preliminary hearing, *People v. Moody,* 630 P.2d 74, 77 (Colo.1981); (3) what evidence to offer, *Steward, supra,* 179 Colo. at 34–35, 498 P.2d at 934–35; (4) whether to present an alibi defense through the testimony of witnesses other than the defendant, *People v. Tackett,* 742 P.2d 957, 960–61 (Colo.App.1987); and (5) whether to request a continuance of trial, *Anderson, supra,* 649 P.2d at 724 (applying Uniform Mandatory Disposition of Detainers Act). *See also ABA Standards for Criminal Justice: Prosecution Function and Defense Function* § 4–5.2(b) (3d ed. 1993) (*ABA Standards*) (also identifying whether and how to conduct cross-examination, what jurors to accept or strike, and what trial motions to make as decisions within the province of defense counsel after consultation with the client).

In contrast, the supreme court has held that some trial decisions are so inextricably linked with a defendant's fundamental constitutional rights that only the defendant is entitled to make them. These decisions generally include: (1) what plea to enter; (2) whether to accept a plea agreement; (3) whether to waive the right to a jury trial; (4) whether to testify; (5) whether to be present at each step of felony proceedings; and (6) whether to appeal. *Steward, supra,* 179 Colo. at 34–35, 498 P.2d at 934–35; *People v. Curtis,* 681 P.2d 504, 511 (Colo.1984); *Moore, supra,* 174 Colo. at 572, 485 P.2d at 115;

*Penney v. People,* 146 Colo. 95, 101, 360 P.2d 671, 673 (1961); *see also ABA Standards, supra,* § 4–5.2(a).

In our view, the decision whether to request a lesser nonincluded offense instruction implicates a defendant's fundamental rights, and therefore belongs to the defendant.

A defendant's request for a lesser nonincluded offense instruction "is tantamount to a defendant's consent to an added count being charged against him." *People v. Rivera,* 186 Colo. 24, 28–29, 525 P.2d 431, 434 (1974); *accord People v. Garcia,* 940 P.2d 357, 361 (Colo.1997). "Normally, by asking for a lesser nonincluded offense instruction, the defendant will deny the original charge, but admit committing a lesser offense which carries a less severe penalty." *Skinner, supra,* 825 P.2d at 1047. Indeed, unlike the case with a lesser included offense, a defendant can be convicted of and punished for *both* the lesser nonincluded offense and the greater offense. *Skinner, supra,* 825 P.2d at 1047–48.

Therefore, we see no basis for distinguishing between a defendant's decision whether to plead guilty in exchange for dismissal of more serious charges and the decision whether to request an instruction on a lesser nonincluded offense. The decision whether to create exposure to such additional culpability should rest with the defendant. *Cf. State v. Wiplinger,* 343 N.W.2d 858, 860–61 (Minn. 1984) (defendant entitled to new trial where defense counsel impliedly admitted defendant's guilt without first obtaining his client's consent to that strategy, even though defendant would likely have been convicted in any event); *State v. Anaya,* 134 N.H. 346, 351–54, 592 A.2d 1142, 1145–46 (1991) (defense counsel's concession of guilt to lesser charge constituted ineffective assistance where defendant proclaimed his innocence to all charges and did not consent to concession of guilt). *But see Vinson v. State,* 494 So.2d 175, 176–77 (Ala.Crim.App.1986) (admission of guilt to lesser offense over the defendant's objection was legitimate tactical decision by counsel).

Here, the record reveals that defendant clearly and consistently maintained his innocence of the crimes charged prior to his

conviction. He also clearly expressed his desire not to have an instruction submitted to the jury on third degree assault. Under these circumstances, we conclude that it was defendant's prerogative, and not his attorney's, to decide whether to request the lesser nonincluded offense instruction.

Accordingly, we conclude that the trial court did not err in denying defendant's counsel's request to submit the lesser nonincluded offense instruction over defendant's objection.

We recognize that the People may be entitled to request a lesser nonincluded offense instruction, over the defendant's objection, where the defendant has notice of such a charge by virtue of the charging document. *Garcia, supra,* 940 P.2d at 362–64. In such cases, the defendant's consent is irrelevant. Our holding in this case is therefore limited to the situation where a conflict exists between a defendant and his counsel over whether to request a lesser nonincluded offense instruction, and the prosecution is not entitled to such an instruction or, if entitled to it, does not request it.

### D. Aggravated Sentence

■ Last, defendant argues that the trial court violated his constitutional rights to due process and trial by jury by imposing a sentence in the aggravated range. We disagree.

Attempted reckless manslaughter is a class five felony. Sections 18–2–101(4), 18–3–104(2). The presumptive sentencing range for a class five felony is one to three years in prison. Section 18–1.3–401(1)(a)(V)(A). This range may be increased, however, to twice the presumptive range, or up to two to six years in prison, if the trial court determines that extraordinary aggravated circumstances are present. Section 18–1.3–401(6).

The Supreme Court has held that, " '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " *Blakely v. Washington,* 542 U.S. 296, 301, 124 S.Ct. 2531, 2536, 159 L.Ed.2d 403 (2004) (quoting *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348,

2362–63, 147 L.Ed.2d 435 (2000)); *see also Lopez v. People,* 113 P.3d 713, 720 (Colo. 2005). The "statutory maximum" in this context refers to "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely, supra,* 542 U.S. at 303, 124 S.Ct. at 2537 (emphasis omitted); *see Lopez, supra,* 113 P.3d at 722.

■ An aggravated sentence is permissible under *Blakely* if it is supported by at least one of the following types of facts: "(1) facts found by a jury beyond a reasonable doubt; (2) facts admitted by the defendant; (3) facts found by the court after the defendant stipulates to judicial fact-finding for sentencing purposes; and (4) facts regarding prior convictions." *Lopez, supra,* 113 P.3d at 719; *see also People v. Martinez,* 128 P.3d 291, 293 (Colo.App.2005). Facts of the first, second, and third types are considered "*Blakely*-compliant," whereas facts relating to prior convictions are considered "*Blakely*-exempt." *Lopez, supra,* 113 P.3d at 723. As long as the sentencing court relied on one of these four types of facts in aggravating the sentence, the sentence does not violate the defendant's rights. *Lopez, supra,* 113 P.3d at 731; *Martinez, supra,* 128 P.3d at 293. Whether any of these four types of facts constitutes an extraordinary aggravating circumstance is a discretionary determination entrusted to the sentencing judge. *Lopez, supra,* 113 P.3d at 730.

Here, the trial court imposed an aggravated sentence of five years based on a number of factors. The court stated:

[B]ased upon the fact that this was a repeated choking, based upon the fact that there have been other incidents involving the victim in this case, based upon the fact that he has got a prior child abuse conviction against the child whom he is indicating today that he wants mercy for, and based upon the totality of what happened in this case, as I indicated repeated choking and beating that was administered to [the victim], the Court feels that the Department of Corrections sentence is appropriate.

The Court is going to find aggravating circumstances in this case. So the aggravating circumstances are as follows: That

the defendant in this matter repeatedly choked the victim and indicated his intent to kill her. And the Court finds her testimony credible during the course of trial, that but for pleading for her life, she would have been dead in this case. He went over uninvited into somebody's house that he was told not to go into. That he has got prior assaultive conduct, that he has choked women in the past, specifically his ex-wife, and that he does have assault-related conduct.

The Court is going to sentence you to the custody of the Executive Director of the Colorado Department of Corrections for a period of five years, and that will be followed by two years of mandatory parole.

While the jury found beyond a reasonable doubt that defendant recklessly "engaged in conduct constituting a substantial step toward the commission of" recklessly causing the death of the victim, it did not make any specific factual finding about the commission of the offense, such as whether defendant repeatedly choked the victim. Nor did the jury find that defendant had perpetrated incidents of domestic violence against the victim other than the particular incident from which the charges in this case arose. Hence, those facts relied on by the trial court cannot support the aggravated sentence.

However, the trial court also relied on defendant's prior misdemeanor conviction for child abuse. See Martinez, supra, 128 P.3d at 294 (sentencing court may aggravate sentence based on prior misdemeanor convictions). Information about this conviction was contained in the presentence investigation report. In addition, the trial court referred specifically to the child abuse conviction twice in its findings during the sentencing hearing, and to defendant's "prior assaultive conduct" as one major factor it considered when imposing the aggravated sentence. Defendant's prior conviction for child abuse clearly constitutes "prior assaultive conduct."

We therefore conclude that the trial court's consideration of defendant's prior conviction did not violate his constitutional rights.

Defendant's judgment of conviction and sentence are affirmed.

Judge CARPARELLI concurs.

Judge WEBB specially concurs.

Judge WEBB specially concurring.

While agreeing with the majority's disposition of this appeal, I write separately to articulate an alternative rationale—acquiescence—for affirming the trial court's decision not to give the lesser nonincluded offense instruction.

In People v. Isham, 923 P.2d 190 (Colo. App.1995), the division held that the trial court's erroneous disqualification of the defendant's counsel did not require that a later guilty plea be vacated as involuntary because the defendant had acquiesced in representation by replacement counsel. The division focused on the defendant's acknowledgement at the plea hearing that he was completely satisfied with the legal advice and services of replacement counsel and did not wish to consult with any other attorney concerning the plea.

Similarly here, after having heard his attorney request this instruction, defendant clearly and unambiguously directed the trial court that he did not want the jury so instructed. He reiterated this position after further dialogue concerning the instruction between his counsel and the court. Defendant does not assert that he lacked competency at the time. Nor does he argue that his direction was based on a misunderstanding of, or misinformation about, relevant law.

Generally, we do not consider on appeal a position contrary to that taken by the party below. See, e.g., Grossman v. Columbine Med. Group, Inc., 12 P.3d 269, 271–72 (Colo. App.1999) ("[I]ndeed, plaintiff alleged in his pleadings before the trial court that he was an independent contractor. Therefore, we decline to consider his contrary position on appeal."); People in Interest of R.L., 961 P.2d 606, 608 (Colo.App.1998) ("[C]ounsel for the department again 'reminded' the trial court that the ICWA applied to the proceeding. Under these circumstances, the department may not take a contrary position on appeal.").

Accordingly, in light of defendant's direction to the trial court, I would not subject the issue to further analysis.